PEOPLE ex rel. HUNT v. LANE, Sheriff.

(Supreme Court, Appellate Division, Second Department. May 7, 1909.)

1. STATUTES (§ 192*)—CONSTRUCTION—MEANING OF WORDS.

In construing statutes, words are to be used in their technical sense if they have acquired one, and in their popular sense if they have not, unless adequate grounds are found, either in the context or in the consequences following from a literal interpretation, for concluding that such interpretation does not give the real intent of the Legislature.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 270; Dec. Dig. § 192.*]

2. STATUTES (§ 183*)—CONSTRUCTION—LEGISLATIVE INTENT.

A thing which is within the letter of the statute is not within the statute, unless it is within the intention of the Legislature.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 261; Dec. Dig. § 183.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WITNESSES (§ 304*)—PRIVILEGES—STATUTES.

A statute which, while it compels a witness to testify, protects him where he discloses the circumstances of his offense and the source from or the means by which evidence of its commission or his connection with it may be obtained or made effectual for his subsequent conviction, is sufficient, within Const. art. 1, § 6, and the fifth amendment of the federal Constitution, providing that no person shall be compelled in any criminal case to be a witness against himself.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1051, 1052; Dec. Dig. § 304.*]

4. WITNESSES (§ 304*)—PRIVILEGES—STATUTES.

A statute compelling a witness to testify, but protecting him from the consequences of his disclosures, is a statute of indemnity, and must be construed to effect a practical and beneficent purpose, and not so as to unduly hinder or obstruct the administration of criminal justice.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1051, 1052; Dec. Dig. § 304.*]

5. CRIMINAL LAW (§ 42*)—PRIVILEGES—STATUTES—"PUNISHMENT."

Where one who had been convicted and sentenced for aiding illegal voting at an election, by inducing a designated person to vote, appeared pursuant to a subpœna before a committing magistrate and testified in reference to his crime and his efforts to procure various persons to vote at the election, he was not entitled to his discharge, under Pen. Code, § 41q, providing that any person testifying to offenses against the elective franchise shall not thereafter be liable to indictment, prosecution, or "punishment" for the offense with reference to which his testimony was given, the word "punishment," when construed, as required by section 11, according to its fair import, not meaning the enduring of penalty, but the act of inflicting a penalty, and referring to the act of fixing the penalty before such examination.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 45; Dec. Dig. § 42.*

For other definitions, see Words and Phrases, vol. 7, pp. 5850. 5851; vol. 8, p. 7775.]

Rich, J., dissenting.

Appeal from Special Term, Westchester County.

Habeas corpus by the People of the State of New York, on the relation of David H. Hunt, against Charles M. Lane, Sheriff of Westchester County, for the discharge of Frank M. Gagliardi, convicted and sentenced for crime. From an order dismissing the writ, relator appeals. Affirmed.

·Argued before WOODWARD, JENKS, GAYNOR, BURR, and RICH, JJ.

David H. Hunt, in pro. per.

Francis A. Winslow (Frederick E. Weeks, on the brief), for respondent.

BURR, J. On the 18th day of November, 1908, Frank M. Gagliardi was convicted of the crime of feloniously aiding illegal voting by inducing one Savarino to vote at a village election held in the village of White Plains on the 19th of November, 1907, well knowing that said Savarino was not entitled to vote threat. He was thereupon sentenced to the New York State Reformatory at Elmira. While he was still in the custody of the sheriff of the county, the district attorney instituted a proceeding against John Doe for procuring persons to illegally vote at such election, and subpœnaed the said Gagliardi to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

attend as a witness before a Supreme Court justice sitting as a committing magistrate. Gagliardi was asked, among other things, what he knew about the village election of 1907, or any matter by which a violation of the law could be shown. He refused to answer, and was directed by the magistrate to do so, and he then testified as to his efforts to procure 25 men outside of the village to vote at said election. Notwithstanding the statement of the magistrate at the commencement of the examination that he need not say anything in connection with the crime for which he had been convicted, I think it must be conceded that the question propounded was sufficiently broad to relate to such crime, and that the testimony subsequently given did so relate. Immediately after the conclusion of such examination the relator here, who was and is the attorney for said Gagliardi, sued out a writ of habeas corpus and demanded his discharge upon the ground that he was no longer subject to punishment.

The statute under which Gagliardi was convicted is contained in title 5 of the Penal Code, relating to crimes against the elective franchise. Said title provides, among other things, as follows:

"A person offending against any section of this title is a competent witness against another person so offending and may be compelled to attend and testify on any trial, hearing or proceeding or investigation in the same manner as any other person. The testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person testifying. Any such person testifying shall not thereafter be liable to indictment, prosecution or punishment for the offense with reference to which his testimony was given, and may plead or prove the giving of testimony accordingly, in bar of such an indictment or prosecution." Pen. Code, tit. 5, § 41q.

The determination of this proceeding depends upon the meaning of the word "punishment" in the section above quoted. In construing statutes, words are to be used in their technical meaning if they have acquired such meaning, and in their popular meaning if they have not, unless adequate grounds are found, either in the context or in the consequences which would follow from a literal interpretation, for concluding that such interpretation does not give the real intention of the Legislature. Endlich on Construction of Statutes, § 2. A thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers. Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819. The Legislature has provided, with reference to the Penal Code, that:

"The rule that a penal statute is to be strictly construed does not apply to this Code or any of the provisions thereof, but all such provisions must be construed according to the fair import of their terms, to promote justice, and effect the objects of the law." Pen. Code, § 11.

Punishment is either the act of inflicting a penalty for an offense or the enduring of the penalty. Century Dict. tit. "Punishment." The word "punishment," as used in the statute under consideration, may therefore relate either to the act of the court in determining the extent of the punishment to be inflicted, and imposing a proper sentence to give effect to such intent, or it may relate to the physical pain and discomfort connected with the enduring of the sentence inflicted. Which meaning will the better promote justice and effect the objects of the law?

Offenses against the elective franchise, like those against the laws relating to gaming, bribery, or in violation of the statutes enacted under the provisions of the interstate commerce clause of the federal Constitution, are often difficult of proof, because knowledge of the facts which will constitute the necessary evidence is confined to participants in the offense. For that reason various statutes have been passed, both by Congress and by various state Legislatures, intended to facilitate prosecuting officers in securing such evidence, even to the extent of compelling a supposed participant in the crime to appear and testify. Both the federal and the state Constitutions, however, contain provisions to the effect that no person shall be compelled in any criminal case to be a witness against himself. Const. N. Y. art. 1, § 6; Const. U. S. Amend. art. 5. Any statute which, while it compels him to testify, protects the witness if he does disclose the circumstances of his offense and the sources from which or the means by which evidence of its commission or of his connection with it may be obtained or made effectual for his subsequent prosecution and conviction, is sufficient to comply with the constitutional requirements. People ex rel. Lewisohn v. O'Brien, 176 N. Y. 253, 68 N. E. 353; People v. Cahill, 126 App. Div. 391, 110 N.. Y. Supp. 728, affirmed 193 N. Y. 232, 86 N. E. 39; Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110; In re Emery, 107 Mass. 172, 9 Am. Rep. 22. Such a statute, however, should be construed to effect a practical and beneficent purpose, namely, at the same time to secure the witness in his constitutional right and to permit the prosecuting officer to secure evidence of a crime. It should not be construed so as to unduly impede, hinder, or obstruct the administration of criminal justice. Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819.

Part of the punishment of a crime, giving to the word its secondary meaning of the pain to be endured in consequence of it, arises from the shame and the disgrace attendant upon conviction and sentence. No statute could take that away, and yet, although that has been urged as a reason why a statute similar in form to this one did not give complete indemnity under the Constitution to the person to be examined, such contention was not sustained. Brown v. Walker, supra. Statutes similar to the one in question have always been construed solely as statutes of indemnity, passed to fulfill the constitutional requirements, and not as statutes either of reward to the person testifying or of general amnesty. It not infrequently happens that a person serving a sentence in one of the penal institutions of the state is brought into court to testify as to the participation of another in the crime of which he has been convicted. It has never heretofore been claimed that the effect of giving such testimony was to work an immediate pardon, or suspend the further execution of the sentence. It may well be that the Legislature thought, if a person who had been convicted of a crime, but who had not been sentenced, were compelled by his testimony to disclose his participation in other similar crimes, the mind of the court might be affected in determining the extent and severity of the sentence when the court had discretion in the matter. For that reason the Legislature may have deemed it wise to provide,

not only that no indictment or prosecution should follow such examination, but that the judicial act of fixing the punishment should precede it, if he had already been convicted.

Giving it such construction, full force and effect may be given to every word of the statute, so as "to promote justice and effect the objects of the law." The order appealed from should be affirmed.

Order affirmed, without costs.

WOODWARD and JENKS, JJ., concur. GAYNOR, J., concurs on the ground that the immunity has no reference to persons already convicted of the crime. RICH, J., dissents.