## JAMES H. R. LOWE *vs.* STATE OF MARYLAND.

*Plea of Guilty by Accomplice Who Testifies for the State—Appeal from Judgment Against Him—Exemption from Prosecution of Person Who Becomes State's Evidence.*

When a person indicted pleads guilty, he cannot appeal from the judgment entered upon that plea, provided the judgment was properly entered, and the plea of guilty was made voluntarily and with full understanding of its nature and effect.

Two men were indicted for the crime of burning a house. One of them, who testified fully and truthfully for the State at the trial of the other, supposing that he would thereby be exempt himself from further prosecution, pleaded guilty. Upon this plea judgment and sentence were entered. *Held,* that since it does not appear that the traverser understood the effect of his plea of guilty and intended to waive his claim to exemption from prosecution because he had turned State's evidence, the judgment was not based on a voluntary plea of guilty, and the traverser is entitled to appeal therefrom.

*Held,* further, that the traverser should be allowed to withdraw the plea of guilty, if he so elects, so as to give to the State's attorney, an opportunity to enter a *nolle prosequi,* or so that the Court may continue the case until an application for a pardon is submitted to the Governor.

When an accomplice in a crime committed by him and another testifies fully and truthfully at the trial of the latter, under an agreement or understanding with the prosecuting officer, known to the Court, that he should be immune from further prosecution, he becomes equitably entitled to such exemption. But such implied promise of immunity cannot be pleaded in bar of further prosecution.

When an accomplice has testified for the State at the trial of a person indicted for the same crime, public policy and the usage of the Court require that the prosecuting attorney should either enter a *nolle prosequi* or that the Court should continue the case, or suspend sentence, until application be made to the Executive for a pardon.

*Decided June 29th, 1909.*

Appeal from the Circuit Court for Frederick County (WORTHINGTON, C. J., and MOTTER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and THOMAS, JJ.

*Hammond Urner* and *Edward S. Eichelberger,* for the appellant.

The testimony of the appellant was given under a promise of the State's Attorney, implied in law, of immunity from further prosecution and sentence for the offence, and that he is, therefore, entitled to pardon and to a suspension of judgment and sentence to the end that such pardon may be procured.

: An accomplice is in all instances a competent witness for the prosecution, but whether in all cases he shall be permitted to become a witness and thus earn an exemption from punishment, which is the implied condition of his turning informer and declaring the whole truth, is in the discretion of the Court and the prosecuting officer. *Lindsay v. People,* 63 N. Y. 143, 153.

If the Court admits him as a witness and he testifies fully and candidly, there is an implied promise of immunity on the part of the Government. *Nickelson v. Wilson,* 60 N. Y. 362.

If an accomplice be admitted to testify and appears to have acted in good faith in giving testimony, the Government is bound in honor to discharge him. Public policy requires that good faith be observed with persons charged with

crime who are induced to testify under such circumstances. The prisoner is privileged against criminating himself and the waiver of this privilege constitutes a consideration. *Nickelson* v. *Wilson, supra.*

The testimony of an accomplice incriminating himself is a condition upon the performance of which to the satisfaction of the Court he acquires an equitable title to a pardon; the admission of the party as a witness amounts to a promise by the Court of a recommendation to mercy upon his making a full and fair disclosure of all circumstances of the crime. The discretion of the Court goes to the admission of the party as a witness, but once admitted and testifying the party is exempt from punishment. *People* v. *Whipple,* 9 Cowen, N. Y. 705.

In *Commonwealth* v. *Knapp,* 10 Pick. (Mass.) 477, Webster, of counsel for the State, declared: "In our practice the moment an accomplice is permitted by the Attorney-General to make a disclosure he is safe—he is beyond hope or fear—his security is as complete as if he had received the pardon. The only thing that can bring him into jeopardy is a departure from the truth; these disclosures are not like a simple confession, because they are not gratuitous."

In *State* v. *Graham,* 12 Vroom (N. J.), the Court says, in quoting with approval from *U. S. Lee,* 4 McLean, 103: "The Government is bound in honor under the circumstances to carry out the understanding or arrangement (to discharge the accomplice admitted as a witness for the State) by which the witness testified and admitted, in so doing, his own turpitude. Public policy and the ends of justice require this of the Court. If the District Attorney should fail to enter a *nolle pros.* the case would be continued (without trial) until a pardon could be applied for, but to discontinue the prosecution is the shorter and better mode." Bishop in speaking of the accomplice being used as a witness says: "In most instances the prosecuting officer declines to institute criminal proceedings against him; or if proceedings have been begun

he simply discontinues them by *nolle pros.* or other proper
means." (See 1 *Greenleaf Ev.*, secs. 363-379.)

In the different States this immunity varies as to form ac-
cording to the wording of the statute or modifying facts in
the individual cases; always guaranteeing, however, to the
traverser in cases like the present exemption either from
sentence or its execution. If in the last analysis immunity
from punishment is to be realized, why wrap the traverser in
a coil of red tape? Why not, as the authorities suggest,
grant the traverser what he has earned as of right? The
question of punishment *vel non* in such a case, or its extent,
is not, as we submit, a matter for the discretion of the trial
Court, since that discretion goes merely to the question as to
whether the traverser shall be permitted to testify. If such
permission is given the immunity at once attaches. Having
by a plea of guilty and his truthful testimony (admitted by
the Bill of Exceptions) qualified himself in good faith as a
witness for the State whose testimony was indispensable for
the conviction of the principal offender, it becomes obligatory
on the State to observe towards the traverser the most im-
maculate good faith in the performance of its promise of im-
munity, whether expressed or implied. Practically the ob-
ject of the State in criminal prosecution is to convict the
guilty, and public policy admits the testimony of an accom-
plice, in order that the more dangerous should not escape,
upon the implied promise of immunity to the party so testify-
ing, as otherwise few criminals could be punished where they
operate jointly.

The Supreme Court, in *Counselman* v. *Hitchcock,* 142 U.
S. 110, has said: "The constitutional provisions for the
security of persons and property should be liberally con-
strued; a close and literal construction deprives them of half
their efficiency and leads to gradual depreciation of the right
as if it consisted more in sound than substance; it is the
duty of the Court to be watchful for the constitutional rights
of the citizen and against any stealthy encroachments thereon.
Their motto should be *'obsta principiis.'* We are clearly of

the opinion that no statute which leaves the party or witness subject to the prosecution after he answers the criminating questions put to him can have the effect of supplanting the privilege conferred by the Constitution of the United States. In view of the constitutional provision a statutory enactment to be valid must afford absolute immunity against future prosecution for the offence to which the question relates."

Every man is presumed to know the law, not only as affecting him adversely, but necessarily also as granting him benefit or immunity either by implication or by express provision.

It is submitted that the implied promise of immunity upon which the traverser in this case had a right to rely should be held to be as binding upon the State and as effective for the traverser's protection as if an express agreement had been made between the prosecution and the prisoner for that specific purpose.

The present case is not one in which the question arises as to whether a conceded discretion of the Court has been abused. The sole question presented is whether or not the Court below had any discretion whatsoever in the premises to withhold from the appellant the immunity from punishment to which it is submitted he was clearly entitled under the terms of the implied promise, upon the faith of which he furnished for the benefit of the State in another prosecution his self-incriminating testimony.

*Isaac Lobe Straus, Attorney-General* (with whom was *Arthur D. Willard, State's Attorney* for Frederick County on the brief), for the appellee.

I. The motion of the appellee that this appeal be dismissed should be granted—

*1st.* Because the judgment appealed from was entered upon a plea of guilty and is, therefore, in the nature of a judgment by confession from which no appeal lies; and

*2nd.* Because the record plainly shows that the sole and only "error" alleged by the appellant to be the basis and

ground of his appeal is the refusal of the Court below to suspend judgment—which was entirely discretionary with the Court below and not a subject of appeal and review.

"A plea of guilty is a confession of guilt and is equivalent to a conviction. The Court must pronounce judgment and sentence as upon a verdict of guilty." 12 *Cyc.,* 353. See also 2 *Hawkins,* P. C., C. 31, sec. 1; 2 *Hale,* P. C. 225; 1 *Chitty,* Cr. Law, 429; 4 *Blackstone Commentaries,* 329; *Elliott on Appellate Procedure,* 249.

In *State* v. *Burthe,* 39 La. Ann. 328, this precise point was decided that a plea of guilty is an express waiver of the right to appeal from the judgment entered on such plea. So also in 1 *Archbold Cr.,* Pr. & Pl. (8th Ed.) 334; 2 *Cyc.,* 617, 651; *State* v. *Griffis,* 117 N. C. 709; *City of Edina* v. *Beck,* 47 Mo. App. 234; *Grey* v. *State,* 107 Ind. 177; *Ringgold's Case,* 1 Bland. 5.

2. The appellant's motion to suspend sentence was addressed to the discretion of the Court below and was overruled by the Court in the exercise of the discretion vested in it by the common law and the statutes of this State. This Court will not review and control that discretion upon appeal. Article 27, section 461 provides: "The Courts may suspend sentence generally or for a definite time and may make such orders and impose such terms as to costs, recognizance for appearance or matters relating to the residence or conduct of the convicts as may be deemed proper, etc."

This section is practically declaratory of the common-law powers of Courts of criminal jurisdiction, and clearly vests a discretion in the Courts over the matter of suspending sentence. The whole tenor of the section shows unmistakably that the subject was deemed by the wisdom of the law and by that of the Legislature of the State to be one which it was proper to commit to the judicial discretion of the trial Court which imposes sentence. A discretion of this sort, when exercised without abuse, is not reviewable upon appeal or writ of error.

In 2 *Hawkins P. C.,* Ch. 51, sec. 8, it is said: "It seems agreed, that every Court which has power to award an execution, has also of common right a discretionary power of granting a reprieve."

Again, in 1 *Chitty Cr. L.,* 758: "But the more usual course is, for a discretionary reprieve to proceed from the judge. himself, who from his acquaintance with all the circumstances of the trial, is most capable of judging when it is proper. The power of granting this respite belongs, of common right, to every tribunal which is invested with authority to award execution. And this power exists even in case of high treason though the judge should be very prudent in its exercise. * * * The judge sometimes also allows it before judgment, or at least intimates his intention to do so, as when he is not satisfied with the verdict, and entertains doubt as to the prisoner's guilt; or when a doubt arises, if the crime be not within clergy; or when, from some favorable circumstances he intends to recommend the prisoner to mercy." See also—1 *Bishop's Cr. Pro.* sec. 880.

In 4 *Bl. Com.* 394, where the term reprieve in accordance with the old usage, is employed in the sense of the stay of judgment either before or after judgment; it is said: "A reprieve, from *reprendre,* to take back, is the withdrawing of a sentence for an interval of time; whereby the execution is suspended. This may be, first, *ex arbitrio judicis* (at the will of the judge); either before or after judgment; as where the judge is not satisfied with the verdict, or the evidence is suspicious, or the indictment is insufficient, or he is doubtful whether the offense be within clergy, or sometimes if it be a small felony, or any favorable circumstances appear in the criminal's character, in order to give room to apply to the. crown for either an absolute or conditional pardon. These arbitrary reprieves," etc., etc.

The discretionary power to suspend sentence is described in this language by Lord Hale: "Reprieves, or stays of judgment or execution are of three kinds, viz. * * * II. *Ex arbitro judicis.* Sometimes the judge reprieves before judg-

ment, as where he is not satisfied with the verdict, or the evidence is uncertain, or the indictment insufficient, or doubtful whether within clergy. Also when favorable or extenuating circumstances appear and when youths are convicted of their first offense. And these arbitrary reprieves may be granted or taken·off by the justices of gaol delivery, although their sessions be adjourned or finished, and this by reason of common usage." 2 *Hale P. C.,* Ch. 58, page 412, quoted in *People* v. *Court of Sessions,* 141 N. Y. 288, 293.

So also in 19 *Ency. of Pl. & Pr.* 446, it is said: "The authorities are agreed that the Court may, in the exercise of its discretion, suspend sentence for a reasonable time, or temporarily for stated periods from time to time." *Hochheimer Cr. L.,* (2nd Ed.), 212: "Courts may suspend or reprieve sentence at their discretion." In 12 *Cyc.,* page 773, "Criminal Law Suspension of Sentence"—in a note entitled "Cannot be Assigned as Error," it is said: "And where the suspension is asked by defendant and granted on satisfactory reasons appearing to the Court, he cannot, where he is subsequently sentenced, assign this as error" (citing *People* v. *Patrick,* 118 Cal. 331; *Fultz* v. *State,* 2 Sneed (Tenn.) 232).

II. *The Judgment and Sentence Should be Affirmed*—The claim of the appellant herein is conclusively controverted by the English and American authorities. His contention is wholly and effectually disposed of by the decision of the Supreme Court of the United States in *United States* v. *Ford* (the "Whisky Cases"), 99 U. S. 594.

In that case, upon a most learned and elaborate review of the authorities, it was decided that:

1. Accomplices, though admitted as witnesses for the prosecution, are not of right entitled to a pardon, but have only an equitable right to a recommendation to executive clemency.

2. Prisoners, under such circumstances, cannot plead such right in bar to an indictment against them, nor avail themselves of it as a defense on their trial.

3. The district attorney has no authority to make an agreement that if a person charged with an offense would testify

against his accomplices, he should be exempt from prosecution and from certain assessments made against him.

In *Ex parte Wells,* 18 Howard, 307, it was declared by the Supreme Court that "Accomplices, though admitted, according to the usual phrase, to be 'King's evidence,' have no absolute claim or legal right to a pardon;" and that "he cannot plead it in bar to an indictment for such offense."

LORD MANSFIELD, in the leading case of *Rex* v. *Rudd,* 1 Cowper, 332; *S. C.,* 1 Leach C. C. 115, laid down the same doctrine.

Great inconvenience was occasioned by the old practice of approvement (which is thoroughly explained by CHIEF JUSTICE BEASLEY in *State* v. *Graham,* 41 N. J. L. 15; and see also 2 *Hale P. C.,* 226; 4 *Blackst. Comm.,* 330; *Rex* v. *Rudd,* Cowp. 332; 2 *Starkie,* Ev. 15), and therefore a similar but less inconvenient mode of proceeding was adopted by which an accomplice may be entitled to a recommendation to mercy, but not to a pardon as of legal right, nor can he plead it in bar or avail himself of it in his trial. 2 *Hawkins P. C.,* n. 3, page 532; 2 *Russell Crimes,* 9th Am. Ed. 596; 1 *Chitty Crim. Law,* 82; 1 *Phillip's Evidence,* 86; *U. S.* v. *Ford,* 99 U. S. 594.

And in 1 *Roscoe Crim. Evidence,* star page 135, that eminent author says: "The practice now adopted is for the magistrate before whom the accomplice is examined or for the Court before which the trial is had to direct that he shall be examined, upon an understanding that if he give his evidence in an unexceptionable manner, he shall be recommended for a pardon. But this understanding cannot be pleaded by him in bar of an indictment, nor can he avail himself of it at his trial, for it is merely an equitable claim to the mercy of the Crown."

In 1 *Am. and Eng. Ency. of Law,* title "Accomplices," page 407, it is said: "He cannot plead the fact in bar of an indictment, nor avail himself of them by motion to dismiss the prosecution."

In *Rex* v. *Garside,* 2 A. and E. 266, where two prisoners under sentence for murder, on being brought before the King's Bench by *habeas corpus,* were asked what they had to say why execution should not be awarded against them, and one of them pleaded, *ore tenus,* that the King by proclamation had promised pardon to any person, except the actual murderer, who should give information whereby such murderer should be convicted; and that he, not being the actual murderer, had given such information, and thereby entitled himself to the pardon; such plea, on demurrer, was held not sufficient.

. In *Cummings* v. *The State,* 4 Kas. 225, it was held that an accomplice used as a State's witness is not entitled to his discharge as a matter of right, but must abide by the discretion of the Court and prosecuting attorney. "We are clearly of opinion that the appellant was not entitled to his discharge as a matter of right. He must abide by the discretion of the Court and prosecuting attorney in the case." To the same effect is *Long* v. *The State,* 86 Ala. 36, 44.

And where the pardoning power cannot act until after conviction of the prisoner, the most that the Court can do is, after conviction, to recommend him to executive clemency. *State* v. *Graham,* 41 N. J. L. 15; 32 Am. Rep. 174; *State* v. *Lyon,* 81 N. C. 600; 31 Am. Rep. 518.

. The case of *Lay* v. *State,* 86 Ala. 36, is on all fours with the case here presented. It was there held that the mere fact that one defendant has been examined as a witness against another defendant on trial for the same crime, and that he has disclosed his own and his associate's guilt, no promise or inducement being held out to him, does not give him even an equitable right to clemency. See also—*Com.* v. *Brown,* 103 Mass. 422; *Com.* v. *Demby,* 103 Mass. 424, note; *Com.* v. *Woodside,* 105 Mass. 594; *Com.* v. *Plummer,* 147 Mass. 601.

In Virginia, an accomplice testifying for the Commonwealth, though fully and fairly disclosing his own guilt and that of his associates, is not equitably entitled to a pardon. *Com.* v. *Dabney,* 1 Rob. (Va.) 754.

In this State, under the Constitution, the most that any Court could do in the case of an accomplice testifying against his associates under indictment would be to commend him to the Governor for pardon.

The power of pardoning being thus distinctly made by the Constitution an executive and not a judicial function, no appeal lies from a refusal of a Court to exercise a power which the Constitution thus withholds from it and vests in the Governor. It is undeniable that in this State the Courts do not grant pardons.

What is claimed by the Appellant in this case is literally a pardon from the Court. An application for pardon is essentially different and distinct from a motion for a suspension of judgment.

Blackstone distinguishes clearly between suspension of sentence and pardon: "If neither pregnancy, insanity, non-identity, nor other plea, will avail to avoid the judgment and stay the execution consequent thereupon, the last and surest resort is in the king's most gracious pardon; the granting of which is the most amiable prerogative of the crown."

In *Wharton's Cr. Pl. and Pr.* (9th Ed.), sec. 536, it is said: "That an accomplice was called as a witness by the prosecution is not a ground for a plea in bar. The practice in such cases is to grant a pardon; but this is solely for the discretion of the executive."

And the same writer, in his work on *Criminal Evidence* (9th Ed.), says (at sec. 443): "Though an accomplice, when called as a witness by the State, makes a clean breast, and exhibits all the facts in the case, however criminatory, he is not in law entitled to pardon; * * * His claim to pardon depends exclusively on executive discretion."

In *People ex rel. Forsyth* v. *Court of Sessions,* 141 N. Y. 288, this distinction was thoroughly considered and elaborately discussed in passing upon an order of the General and Special Terms granting a writ of mandamus requiring a Court of Sessions to proceed to sentence and judgment. See also—*State* v. *Graham,* 41 N. J. L. 15; *State* v. *Lyon,* 81 N.

C. 600; *Long* v. *State,* 86 Mo. 36; 1 *Bishop's New Cr. Proc.,* section 1164.

The overwhelming weight of authority in this country is to the effect that an attempt by the Courts to suspend indefinitely the passing or execution of a sentence is a usurpation of the pardoning power, which belongs solely to the executive. *People* v. *Court of Sessions,* 141 N. Y. 288; *Neal* v. *State,* 104 Georgia, 509; *Gray* v. *State,* 107 Indiana, 177; *State* v. *Voss,* 80 Iowa, 467; *People* v. *Felker,* 61 Michigan, 110; *U. S.* v. *Folsom,* 8 New Mexico, 851; *People* v. *Morissette,* 20 How. Pr. 118; *In re Markeesan,* 5 North Dakota, 180; *In re Webb,* 89 Wisc. 354; *U. S.* v. *Wilson,* 46 Fed. 748.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from a ruling of the Circuit Court for Frederick County in the casse of the *State* v. *James H. R. Lowe,* overruling a motion filed by the traverser, now the appellant, "for suspension of judgment and sentence, and from the judgment of said Court in said case."

The facts are few and simple, but the question presented is new in this State, and is one of much importance.

The appellant was indicted by the grand jury of Frederick County, on February 12th, 1909 for burning an unfinished and untenanted dwelling house, the property of Edward H. Walter. At the same time, the grand jury indicted George T. Fisher for the same offence. It appears from the record that prior to the indictment or presentment of either of these parties, the appellant was summoned and called by the State's Attorney of Frederick County as a witness for the State while he was in the custody of the law upon the charge above stated, to testify in certain *habeas corpus* proceedings, upon the petition of said George T. Fisher, and that the appellant "then and there did testify, fully, truthfully, and at length as to all the facts touching the offense charged in the indictment in this case, which offense was, and is, the same charged against the said George T. Fisher, and which was then and there the subject of inquiry upon said *habeas*

*corpus* proceedings, and the testimony so given by said traverser was given under a promise, implied in law, of the State's Attorney, that the traverser should be immune and exempt from prosecution on account of any matters disclosed in his said testimony given under said implied promise of immunity." It further appears from the record that on February 22nd, 1909, the plea of "guilty" was entered by the traverser in the case against him; that judgment of guilty was thereupon entered thereon by the Court, and that the trial of said Fisher for the same offence was at once taken up and proceeded with; that at the instance of the State's Attorney the traverser remained in Court for the purpose of testifying as a witness for the State against said Fisher, and that during the afternoon of the same day he was summoned, sworn, and testified in said case fully and truthfully as to his knowledge concerning said charge, and that this testimony was given under a promise of the State's Attorney, implied in law, of immunity from prosecution for his participation in said offence.

The record does not disclose whether Fisher was convicted or not, but the result of his trial cannot affect the question we are to determine.

On February 27th, 1909, after the conclusion of the trial of Fisher, the motion of the appellant for suspension of judgment in his case was heard, and thereupon his motion was overruled and he was sentenced by the Court to be confined in the Maryland Penitentiary for two years and six months.

The State now moves to dismiss this appeal because the record shows that the appellant entered a plea of "guilty," upon which plea the judgment was entered, and that from a judgment by confession no appeal lies.

We have examined the numerous authorities cited by the Attorney-General in support of this motion, but in none of them have we found presented the same question presented by the case now before us. The general proposition is, no doubt correctly stated in the passages cited by the Attorney-General from the *Enc. of Pl. & Pr.* and from *Cyc.* and from

the cases supporting that text, but this general principle is subject to qualification which is found in this case. Those passages are as follows:

"A plea of guilty is a confession of guilt, and is equivalent to a conviction. The Court must pronounce judgment and sentence as upon a verdict of guilty." 12 *Cyc.,* 353.

"Where the defendant pleads guilty, it is the right and duty of the Court to pronounce upon him the sentence of the law without any further proceedings, and without any independent adjudication of guilt." 19 *Enc. Pl. & Pr.,* 437.

"It has been held that a party cannot have a judgment, *properly entered* in a plea of guilty, reviewed either by appeal or writ of error, since *such judgment* is in effect a judgment by confession." 19 *Enc. Pl. & Pr.,* 505.

The case of *Edina* v. *Beck,* 47 Mo. App. 234, may be taken as an example of the cases supporting the above text, the Court saying: "The appeal was properly dismissed unless we can hold that a party may appeal from a judgment *properly* entered against him upon his plea of guilty, which is in effect a judgment by confession."

The qualification to which we refer is distinctly indicated in the above citation from 19 *Enc. Pl. & Pr.,* 505, and in the quotation from *Edina* v. *Beck, supra,* in requiring the judgment to be *properly* entered in order that the effect of finality shall be given it. That the word, *properly* did not refer to the mere form of entry, but related to substance is made clear in both the above works in the paragraphs immediately following two of the passages above cited.

In 12 *Cyc.,* 353, the text continues: "To authorize the *acceptance* and entry of a plea guilty, and *judgment and sentence* thereon, the plea must be entirely voluntary. It must not be induced by fear, or by misrepresentation, persuasion, or the holding out of false hopes, nor made through ignorance or inadvertence. The Court should be satisfied as to the voluntary character of the plea before giving judgment and passing sentence, and in some States such an investigation is required by Statute. In

some States the statute requires the Court to admonish the defendant as to the consequences of the plea."

In 19 *Cyc.,* 437, the text continues: *"Before proceeding to make such plea, the foundation of a judgment however, the Court should,* and frequently by statute, *must, see* that it is made by a person of competent intelligence, freely and voluntarily, *and with a full understanding of its nature and effect, and of the facts* on which it is founded."

The bill of exceptions sets forth that at the hearing of the motion of the traverser for suspension of judgment and sentence it was agreed between the State's Attorney and the counsel for the traverser, with the consent of the Court, "that the facts alleged in said motion, and the additional reasons filed in support thereof, but not the conclusions of law drawn therefrom, should be admitted and treated as proved for the purposes of said motion and hearing, to the same extent as if said allegations of fact were proven at the hearing of said motion, said motion having been filed and heard pending judgment and sentence in said case." It will be seen that this exception is somewhat in conflict with another part of the record, the exception stating that the motion was heard on February 27, *pending judgment* in the case, while the docket entries show that *judgment,* guilty, was entered by the Court February 22nd—five days before the motion was heard, and three days before the motion was made. It thus affirmatively appears from the record that the entry of judgment *immediately* followed the tender and receipt of the plea, without any such consideration as we have seen should have been given before proceeding to judgment thereon, and it nowhere appears in the record that the traverser understood that the effect of the plea would be taken to be a waiver of the promised immunity from further prosecution, and that he intended thereby to make such waiver. It is impossible to conceive, in the face of his motion, that he did so understand and intend, and in the absence of evidence that he did, we cannot hold that the judgment was *properly* entered within the meaning of the authorities relied on by

the Attorney-General, and if not so entered, this appeal cannot be dismissed.

It was however, confidently contended that even if the appeal should not be dismissed for the reason first stated, it must still be dismissed for the reason that the motion to suspend sentence was addressed to the discretion of the Court below and was overruled in the exercise of that discretion, which when exercised without abuse, cannot be reviewed on appeal or writ of error.

It cannot be denied, of course, that when a trial Court is acting upon a matter confided to its discretion, there is no appeal from its decision; and so, it may be conceded that in *ordinary* cases the decision of the Court as to the suspension of sentence, whether upon the application of the prisoner, or because the Court is moved thereto of its own will, is not the subject of appeal. But when an accomplice, under an agreement or understanding with the prosecuting officer, approved by, or known to the Court, that he shall be immune from further prosecution, testifies fully and truthfully as to the whole matter charged, the case is not an ordinary case— coming within the general rule above stated. The effect of such an agreement or understanding, where the condition is fulfulled is to vest in the party an *equitable right* which is not the subject of discretion—because it rests upon contract express or implied. In such cases the exercise of discretion begins with considering whether the circumstances of the case are such as to justify the Court in permitting the accomplice to be sworn as a witness under an agreemnt, express or implied, that if he make full disclosure, he shall be exempt from further prosecution, and the discretion ends when he has fully and faithfully performed the condition. In the language of JUSTICE PUTNAM in *Commonwealth* v. *Knapp,* 10 Pick. 47: "He was safe, if he * * * would be true and faithful in the performance of his engagement." But, "the prisoner who does not conduct himself truly is not at liberty to take back the confession which he deliberately made. * * * If they refuse to testify or testify falsely,

they are to be tried themselves, and may be convicted upon their own confession which was made after they were permitted to become witnesses for (the Crown) the State."

We shall not attempt to go into the learning upon this question which has been so thoroughly gone into by the Attorney-General, but shall refer to a few leading cases only which we regard as controlling.

In *U. S.* v. *Ford,* 99 U. S. 594, the Supreme Court, speaking through JUDGE CLIFFORD, reviewed the authorities and delivered an elaborate and careful opinion. In that case the traverser pleaded the implied promise of immunity *in bar of the prosecution,* and the U. S. demurred to the plea, the demurrer being overruled by the Circuit Court for the Northern District of Illinois, and the Supreme Court reversed the judgment for error in this ruling, holding, as it seems·all authorities hold, that such a plea is not good as a plea in bar. The Court, however, quoted with approval the practice as declared by *Starkie,* that "where accomplices make a full and fair confession of the whole truth, and are in consequence admitted to give evidence for the Crown, if they afterwards give their testimony fairly and openly, although they are not of right entitled to a pardon, the usage, lenity and practice of the Court is to stay the prosecution against them, and they have an equitable title to a recommendation to the King's mercy." The Court also cited with approval the case of *Rex* v. *Rudd,* Cowper, 331, which was an application on *habeas corpus* by an accomplice who had testified under an implied promise of immunity, to be admitted to bail pending an application for a pardon, which bail was refused *on the ground that she had not made a full and fair disclosure.* In delivering the opinion of the Court, LORD MANSFIELD expressly declared that if she had come under circumstances sufficient to warrant the Court in saying that she had a title of recommendation to mercy, they would bail her for the purpose of giving her an opportunity of applying for pardon. In the case now before us it is a concession that this traverser does come under such circumstances, and in *Ford's Case, supra,*

the Court proceeded to say that, "if an attempt is made to put the party to trial, in spite of his equitable right to pardon, he may move that the trial be postponed, and may support his motion by his own affidavit, when the Court may properly insist to be informed of all the circumstances. Power under such circumstances is vested in the Court in a proper case to put off the trial as long as may be necessary, in order that the case of the prisoner may be presented to the Executive for decision."

The Court in that case referred to *People* v. *Whipple,* 9 Cowen, 708, and *U. S.* v. *Lee,* 4 McLean, 103, saying that these cases did not support the proposition for which they were there cited, viz, that such a plea was good as an absolute bar to prosecution; but nevertheless approved expressly the practice indicated in those cases as the proper practice, saying: "Public policy and the great ends of justice, it was said in the second case, require that the arrangement between the public prosecutor and the accomplice be carried out, and the Court proceeded to remark that if the District Attorney failed to enter a *nolle prosequi* to the indictment 'the Court will continue the case until an application can be made for a pardon,' which of itself is a complete recognition of the *usage and practice established* in the place of the ancient proceeding of approvement."

In *The People* v. *Whipple, supra,* is a most learned and convincing consideration of the question we have here. In that case the question arose upon the motion of the District Attorney that Jesse Strang, who had just been convicted by the verdict of a jury as a principal in the murder of which Mrs. Whipple, the prisoner at the bar, was charged as an accessory before the fact, should be examined as a witness for the State, and should thereby, upon making full disclosure, become entitled to a recommendation for pardon. The Court, in the exercise of its discretion, inquired into the circumstances of the case, and from them determined that it would be an improper exercise of its discretion to admit him to that privilege, and therefore denied the motion.

JUDGE DUER said: "It is to be considered as if Strang had already been admitted as a witness, had testified for the people on the present trial, in the character of an accomplice; had told the whole truth to the satisfaction of the Court, and by himself or his counsel now claimed of us *to suspend the sentence of the law,* and recommend him for pardon. * * * Now upon what principle of good faith, public morality, sound policy, substantial justice, equitable right or strict law, could we deny this claim?" The Court said further that if it could be supposed that the Executive would not grant a pardon in such case, "the Court would nevertheless be bound most scrupulously to discharge its own obligations as far as they extend and as far as we have power. And if an accomplice perform the condition on which he is admitted as a witness for the people, according to its spirit, we hold ourselves bound in duty and in conscience to redeem the promise which the law raises in his favor, to the very letter. When we have done this we have performed our duty, and are no further responsible for the consequences." The proper practice in such cases seems to be quite uniformly settled— as stated in *U. S.* v. *Ford, supra,* either for the prosecuting officer to enter a *nolle prosequi,* or, upon his refusal or failure to take such course, for the Court to continue the cause to permit him to apply to the Executive for a pardon. *Mr. Bishop* so states it in his new *Crim. Proc.,* secs. 1164 and 1166. In the latter section he states that where the accomplice has been indicted "he simply pleads guilty and then testifies. If his testimony is satisfactory a *nolle prosequi* or other form of discharge follows; otherwise, sentence is entered on his plea of guilty." In sec. 1164, *Mr. Bishop* says: "As he cannot plead his acquired right in bar, if the attorney for the State refuse to recognize it, the Court can only continue the case to permit him to apply for a pardon." In *State* v. *Graham,* 12 Vroom, 20, CHIEF JUSTICE BEASLEY cites with approval the case of *U. S.* v. *Lee,* 4 McLean, 103, in which the result was that the Court held that if the District Attorney should fail to enter a *nolle prosequi* that the cause

should be continued until a pardon could be applied for, but suggested "that to discontinue the prosecution would be the shorter and better mode," and the Court also said in *State* v. *Graham, supra,* that the "only dissent from that general line of authorities was the case of *Com.* v. *Dabney,* 1 Rob. Va. 696, and that this deviation is in a great measure to be accounted for by the existence of a statute that materially modified the subject."

Our conclusion is that it was error under the circumstances of this case to receive the plea of guilty without being satisfied that the accused fully understood its nature and effect, and that he should be permitted to withdraw the plea, if he so elect, so as to give to the State's Attorney an opportunity to enter a *nolle prosequi* if he deems that to be a proper course, or if he thinks it not proper to do so, that the Court may continue the cause until an application for a pardon is submitted to and acted upon by the Governor. Should the State's Attorney decline to discontinue the case, or should the Governor decline to grant a pardon, this Court will have discharged its duty and will be no further responsible in the premises.

> *Judgment reversed and cause remanded for further proceedings in conformity with this opinion.*