### KNOX *v.* STATE

[No. 130, September Term, 1963.]

204

*Decided March 13, 1964.*

The cause originally was submitted to BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ., and subsequently argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ., and GRAY, J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*Herbert L. Pollack* for the appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney for Baltimore City,* and *Andrew J. Graham, Assistant State's Attorney,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellants Knox and Hamm were indicted for armed robbery. Knox pleaded guilty and Hamm not guilty. Hamm was convicted and the conviction was sustained by this Court. *Hamm v. State,* 233 Md. 248. In Knox's appeal we ordered a reargument.

Knox pleaded guilty and, before sentence, was called by the State as a witness against Hamm. In Hamm's case the State proved that there was a robbery of a Western Union branch. Mrs. Luttman testified that a man she identified as Knox, accompanied by another man (Batman) entered the office where she was employed and at pistol point compelled her to lie on the floor while they took money from the till. When they left she called the police, who were on the scene as the two were leaving. Knox ran to a car parked nearby and threw the pistol into it, then ran off. He was pursued and arrested. Hamm drove off but was also arrested. Mrs. Luttman identified Hamm as a former messenger. Knox wore Hamm's badge and dark glasses at the time of the robbery. Batman escaped and was never apprehended. Hamm testified he just happened to be sitting in his car. He denied owning the pistol, but some cartridges that fitted it were found in the cuff of his trousers.

When called by the State, Knox said: "I don't want to testify because it may be against me. * * * I am guilty, your Honor, and like to throw myself on the mercy of the Court." The court told him he must testify, and he did so, implicating Hamm on whom he placed the blame for planning the robbery and supplying the weapon. In cross-examination by Hamm's counsel he said: "* * * the reason why I wanted the fifth amendment not to take the stand is because I did not want my record to incriminate me in this courtroom, I do have a record * * *." As a matter of fact he had some twenty-nine previous convictions of a serious nature, including cutting and stabbing, second degree murder, and many larcenies and burglaries. He said he pleaded guilty because he was caught "in action" and "the woman stated I pulled the pistol on her."

Knox did not contend below, nor does he contend here, that his plea of guilty was not voluntary. He was informed of his

right to plead not guilty, and to elect a jury trial. He was told that the maximum penalty for the crime charged was twenty years. He did not know at that time that he would be called to testify against Hamm.

These facts serve to distinguish the case of *Lowe v. State,* 111 Md. 1. In that case Lowe and Fisher were arrested and while being held on a charge of arson, and before indictment or trial, Lowe was called to testify against Fisher on a *habeas corpus* petition brought on behalf of Fisher. Both were later indicted. Lowe pleaded guilty and voluntarily took the stand against Fisher. Lowe then moved before sentence that the judgment be suspended, contending that he was induced to plead guilty and to testify on a promise of immunity implied in law, but was sentenced nevertheless. On appeal, it was held that he should have been permitted to withdraw his plea of guilty, since it was not shown that he knew its nature and effect, as a waiver of promised immunity. The court found that the State's use of Lowe's testimony to hold Fisher in the *habeas corpus* proceeding was an offer of immunity in the succeeding case, or at least that Lowe was justified in so believing. In *Simond v. State,* 127 Md. 29, 34, Chief Judge Boyd characterized the *Lowe* case as holding that under the circumstances there was an understanding or agreement with the prosecuting officer, approved by or known to the court, that an accomplice or co-conspirator should be immune if he testified fully and truthfully as to the matter charged. In *Graczyk v. State,* 230 Md. 299, 303, the *Lowe* case was cited as turning on the voluntary and understanding nature of a guilty plea.

In the instant case there is no claim of any promise, express or implied. Clearly, the plea of guilty was not induced by any action on the part of the State. It would appear that the State did not intend at that time to call Knox as a witness against Hamm, for the State closed its case against Hamm without calling him and was allowed to reopen it, probably as an afterthought. In any event Knox has never contended that he thought the State intended to call him when he entered his plea. His motivation in filing the plea was simply that the evidence against him was too strong to successfully rebut.

In the absence of any inducement or promise, express or im-

plied, and in the absence of any contention that the plea was not freely and voluntarily entered, it would seem to follow that the claim of privilege against self-incrimination was not well founded.

For present purpose we may assume that the controlling constitutional provision is Article 22 of the Maryland Declaration of Rights, and not the Fifth Amendment to the Federal Constitution. See *Brown v. State,* 233 Md. 288. Cf. *Butz v. State,* 221 Md. 68, 73, and *Davis v. State,* 189 Md. 640, 645. The claim in the instant case was not that Knox might be subjected to prosecution, for the crime about which he was asked to testify or any other crime, but simply that he might be put in an unfavorable position, as regards sentence, by disclosing his record of past convictions. But it is clear that, as a part of the normal sentencing procedure, his past record would be available to the judge. *Murphy v. State,* 184 Md. 70, 82; *Farrell v. State,* 213 Md. 348, 355. He could not keep such information from the court even if the court had permitted him to remain silent.

It is generally recognized that a witness who has pleaded guilty waives his right to claim immunity for the crime in question, because the prosecution is over. In 8 *Wigmore on Evidence* (McNaughton rev. 1961), sec. 2279 (a) it is said: "A conviction for crime [or plea of guilty] discharges all liability to the state and removes the possibility of further penalty; hence an act for which the person has been convicted no longer tends to incriminate, in the sense of privilege. This is universally conceded." See also *United States v. Gernie,* 252 F. 2d 664, 669 (C. A. 2nd), *cert. den.,* 356 U. S. 968, *Reina v. United States,* 364 U. S. 507, 513. In the instant case the testimony of Knox, insofar as it sought to fasten the blame on Hamm as the instigator and planner of the crime, tended to exculpate rather than to incriminate Knox, whereas Hamm, on the stand, sought to place all the blame on Knox claiming that Hamm was an innocent bystander. In any event, the matter of sentence was discretionary with the trial court, and we find nothing to suggest that there was any commitment by any State official to seek or impose a lighter sentence as a reward for the

testimony of Knox. The fact that his testimony was involuntary would in itself negative any implication of a bargain.

*Judgment affirmed.*

BRUNE, C. J., filed the following dissenting opinion, in which PRESCOTT, J., joined.

Though I agree with the court in distinguishing the present case from *Lowe v. State,* 111 Md. 1, 73 A. 637, I am unable to join in the opinion as a whole and find myself in disagreement as to one phase of the case.

The opinion of the court ignores and thereby overrides what seems to me to be a serious question as to the extent of the privilege of a witness (who is also a defendant) against self-incrimination, and it ignores completely the question of the possible exposure of a witness to a charge of perjury because of a variance or contradiction between the testimony which he gives when required to testify and evidence previously given by him under oath. Neither question appears to have been passed upon previously by this court. The first, I think, is fairly raised on this appeal, though we are given little aid in its solution. The second does not seem to me to have been squarely raised (if raised at all) by this appellant in the trial court or on appeal, though it was touched upon in oral argument; but in view of the reference to such contradictory testimony in our opinion in the companion case of *Hamm v. State* (docketed under the same number as this case), 233 Md. 248, 196 A. 2d 464, it seems to call for brief comment.

As to this second point, I note that the Supreme Court of New Jersey has recently had occasion to deal with the problem in *State v. De Cola,* 33 N. J. 335, 164 A. 2d 729, and *In re Boiardo,* 34 N. J. 599, 170 A. 2d 816. Chief Justice Weintraub went into this question very thoroughly in the *De Cola* case. That decision was followed in a per curiam opinion in *Boiardo.* In the latter case, the court thus summarized and restated the rule (170 A. 2d at 818): "As we held in State v. De Cola, supra, * * * a court cannot evaluate a naked claim of possible deviation from prior testimony and hence the witness may be compelled to answer, he however being protected against the

use of the compelled answers if it should later be charged that he perjured himself in his prior sworn testimony." The New Jersey perjury statute, it may be observed, is similar to ours in that proof of two inconsistent, material statements under oath is sufficient without the State being required to prove which of them is false. (See Md. Code (1957), Art. 27, § 437.) I agree with the view of the New Jersey Supreme Court, and think that in fairness to the appellant it should be stated here in the event' (though it may seem unlikely to occur) that he be prosecuted for perjury.

On the main question—whether the privilege against self-incrimination ends with a defendant's plea of guilty or continues until after he has been sentenced — the court's opinion cites three authorities. One is a passage from 8 *Wigmore on Evidence* (McNaughton's rev.) § 2279(a), which does not specifically discuss this question, but speaks generally of a conviction discharging all liability to the state and removing "the possibility of further penalty." Neither *Wigmore* nor the majority opinion explains the applicability of that comment to a case where the penalty has not yet been imposed. If it be assumed that the penalty will be the maximum, of course, no explanation would be necessary. If, however, because the plea of guilty *exposes* the defendant to the maximum penalty, this means that he waives his right of silence in the hope of receiving a lighter sentence, I think that should be made clear, as well as the reason or reasons for so holding. Such a conclusion seems to me difficult to reconcile with the statements of this court to the effect that the privilege against self-incrimination is to be liberally construed, as in *Blum v. State,* 94 Md. 375, 381-82, 51 A. 26, and *Allen v. State,* 183 Md. 603, 607, 39 A. 2d 820.

The other two authorities cited by the majority are *United States v. Gernie,* 252 F. 2d 664 (C. A., 2d), and *Reina v. United States,* 364 U. S. 507. Neither of these cases presented the present question, since in each of them the party claiming the privilege had not only pleaded guilty but had also been sentenced before being required to testify. The same was true in *Romero v. United States,* 249 F. 2d 371 (C. A., 2d), which was cited with approval in *Reina,* along with 8 *Wigmore, Evidence* (3rd ed. 1940), § 2279. (In *Reina,* the petitioner was serving

a federal sentence when summoned to testify before a federal grand jury. The principal question was whether the immunity provision of the Federal Narcotics Law gave him immunity against state as well as federal prosecution.)

Some of the language in *Namet v. United States,* 373 U. S. 179, does tend to support the conclusion of the majority in the instant case, but the question here presented was not raised in the Supreme Court. Neither the opinion of that Court nor the memorandum opinion of the First Circuit Court of Appeals shows whether the co-defendant witnesses, who had pleaded guilty, had or had not been sentenced before they were required to testify against the remaining defendant Namet. He and these witnesses, the Kahns, were represented by the same counsel.

The question of the Kahns' privilege against self-incrimination was raised at Namet's trial, and the trial court ruled that it was lost when they pleaded guilty. The correctness of this ruling was not directly at issue in *Namet.* The case turned chiefly on the propriety of the Government calling these defendants as witnesses at all when it was known that they would claim privilege when questioned as to illegal transactions with Namet. However, in commenting on the propriety of the prosecuting attorney's action, the Court said: "the prosecutor initially did not believe that the Kahns could properly invoke their privilege against self-incrimination, reasoning with some justification that their plea of guilty would erase any testimonial privilege as to that conduct. His view of the law was supported by substantial authority, cf. *Reina v. United States,* 364 U. S. 507, 513, and was in fact upheld by the trial judge. Although it was later ruled that the guilty plea did not render all of the Kahns' conduct immune from further prosecution, thus making testimony as to that conduct privileged, there remained an independent and quite proper reason to call the Kahns as witnesses. Both * * * possessed nonprivileged information that could be used to corroborate the Government's case. They could, and did, testify * * * that they themselves had engaged in accepting wagers. The Government had a right to put that evidence before the jury." (373 U. S. 188.)

If the *Namet* case had involved a review of the rights of the co-defendant witnesses, and if the contention had been raised

that they could not be required to give testimony incriminating themselves while awaiting sentence (if that was their actual situation), the above language would clearly support the conclusion of the majority of this court. But the co-defendant witnesses sought no review and *Namet* did not deal with that question. On the contrary, the Court very explicitly stated (373 U. S. at 185) : "we emphasize at the outset what this does *not* involve. No constitutional issues of any kind are presented. * * * All that this case involves, in short, is a claim of evidentiary trial error."

The distinction between the *Gernie* case and the present case is essentially the same as that between *Gernie* and *Mills v. United States,* 281 F. 2d 736 (C. A., 4th). In the latter case, *Gernie* was distinguished on the very ground that sentence had been imposed. In *Mills,* the witness-defendant had been convicted, but not sentenced. She refused, on the basis of her privilege, to testify on a motion for a new trial filed by a co-defendant (her husband) ; and this claim was upheld.

In my estimation, the answer to the question here should turn upon whether or not the defendant who has pleaded guilty is exposed to the risk of greater punishment by being required to testify with regard to the offense before sentence is imposed.[1] The fact that the appellant here was called upon to testify against his co-defendant, who elected to stand trial, does not alter the fact that his testimony showed his own participation in the offense. His testimony was self-exculpatory only to the extent of trying to shift the blame for originating and planning the robbery to the co-defendant. It may be difficult to show that this appellant received a greater sentence than he would have received, if he had not been required to testify. On the other hand, it is obviously impossible to show that his testimony operated to mitigate his punishment, for he was given the maximum sentence permitted under the statute. One thing which came to light as a result of his being required to testify was a

---

1. Under Maryland Rule 761 a, a defendant has the right, speaking either for himself or through counsel, to make a statement or furnish information in mitigation of punishment. The Rule imposes no obligation upon him to make any statement, and recognizes none.

note which he wrote to the co-defendant offering to testify at the trial (as he had at the preliminary hearing) to exculpate the co-defendant, Hamm, if the latter would get the appellant released on bail before the trial. That could hardly have redounded to the appellant's advantage with regard to the matter of sentence in the light of his testimony at the trial seeking to place the primary blame on Hamm.

Such few cases as have come to my attention dealing with the present problem are not unanimous as to the answer. The oldest one is *Evans v. State of Ohio,* 1 Ohio Decisions 436, 10 Western L. J. 49, a county court case, sustaining a claim of immunity. There it was said: "Can any injury, then, result to a witness thus criminating himself after conviction, but before sentence? We answer in the affirmative. * * * [T]he facts of the case, as developed on his own trial, may be such as to authorize the court in inflicting a mere nominal punishment. He is compelled to criminate himself, and thus it may be, bring upon his own head the extreme penalty of the law." To like effect are a dictum in *People ex rel. Hunt v. Lane,* 132 App. Div. 406, 409-10, 116 N. Y. S. 990, affd. without opinion, 196 N. Y. 520, 89 N. E. 1108, and *Mills v. United States,* above cited. *People v. Den Uyl,* 318 Mich. 645, 29 N. W. 2d 284, goes further and holds that the privilege is available after conviction, sentence, and affirmance on appeal, so long as a petition for certiorari which might result in a new trial is pending.

Adopting a contrary view are *People v. Fine,* 173 Misc. 1010, 19 N. Y. S. 2nd 275, (Sup. Ct.), rejecting a claim of immunity and declining to follow *Evans v. State of Ohio, supra; Commonwealth v. Tracey,* 137 Pa. Super. 221, 8 A. 2d 622, rejecting a claim of privilege; and *State v. Knudtson,* 11 Idaho 524, 83 P. 226. *In re Bando,* 20 F. R. D. 610 (D. C., N. Y.) involves a factual situation similar to that in *People v. Den Uyl, supra,* in that there had been a conviction, sentence and affirmance on appeal. A claim of privilege was disallowed despite the pendency or imminent filing of a petition for certiorari. See also *State v. Simon,* 132 W. Va. 322, 52 S. E. 2d 725, also contra to *Den Uyl.*

The *Tracey* and *Knudtson* cases go on a doctrine of waiver by reason of a plea of guilty. The opinion of the court in the

present case rests upon the fact of conviction as the basis for removing the privilege and seems to draw no distinction between a conviction resulting from a plea of guilty and one resulting from a trial. I believe that the doctrine of the *Tracey* and *Knudtson* case pushes the doctrine of waiver too far. It is, of course, true that where a defendant voluntarily takes the stand and testifies in his own behalf, he does waive his privilege and opens himself up to wide cross-examination. By exercising his right to testify he gives up his right to keep silent with regard to the facts relevant to the charge against him. I do not believe that a defendant who pleads guilty should be regarded as giving up his right to keep silent because he has relieved the State of the burden of presenting evidence against him. His plea, of course, dispenses with proof, but I do not see why it should go further and require him to produce damning details against himself, which may well serve to increase the penalty to which he may be subjected. There seems to be nothing resembling a giving of a *quid pro quo* or taking the bitter with the sweet, either of which may be said to be present when a defendant elects to testify in his own behalf.

What disposition should be made of this case under my view of the question of privilege presents a problem. I am inclined to think that the case should be remanded for the imposition of sentence by a judge who has not heard or had presented to him the appellant's testimony at Hamm's trial.

Judge Prescott has authorized me to say that he concurs in this dissent.