# EDWARD J. SIMOND

### *vs.*

## STATE OF MARYLAND.

*Criminal law : bill of particulars, discretion of Court.  Practice :
address to jury ; right of Court to correct erroneous state-
ments of the law.  Indictment for conspiracy : effect
of .turning State's evidence.  Verdict : form
of appeals ; non-reversible error.*

While the jail record of a witness may be inquired into, or proved, in order to affect his credibility, evidence of his being confined in jail, 10 years previously, on a conviction for drunkenness, is not material on a trial for election frauds.      p. 39

Action upon a demand for a bill of particulars, in criminal as well as in civil proceedings, is a matter that rests within the sound discretion of the Court.                    pp. 31-32

A count in an indictment had been divided into two paragraphs, and the first paragraph stated all the facts necessary in order to fully inform the traverser of the time, place, etc., of the occurrences of the acts with which he was charged.  It was : *Held,* that it was not necessary to repeat those parts in the subsequent paragraph of the count, where there was no room for doubt as to what was meant.                    pp. 32-33

It is the right and may be the duty of a judge to express his dissent from unwarantable statements of law made by counsel in addressing the jury.                    pp. 33-34

The mere fact of turning State's evidence, and testifying in the case against others charged as co-conspirators, does not operate as a grant of immunity to a traverser indicted for conspiracy.                    pp. 33-34

The ruling of a lower court should not be reversed on appeal, even though erroneous, if no injury or prejudice were caused thereby.                    p. 34

In criminal trials, the form of the jury's verdict may be "Guilty" merely, or "Guilty on" one or more counts, specifying which ones; or "Not Guilty" merely, or "Not Guilty on" one or more counts, in conjunction with the finding of guilty on others.                    p. 40

During the course of a criminal prosecution where the Court, in the presence of the jury, made a statement as to the law bearing upon a question before them, no reversible error is presented if the Court subsequently informs the jury that his comments were advisory merely, and that the jury were the judges both of the law and of the facts. p, 40

*Decided November 11th, 1915.*

Appeal from the Criminal Court of Baltimore City. (BOND, J.)

The facts are stated in the opinion the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Edward L. Ward,* for the appellant.

*R. R. Marchant, Deputy State's Attorney* (with whom was *Edgar Allan Poe, the Attorney-General,* and *Wm. F. Broening, State's Attorney,* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant was indicted in the Criminal Court of Baltimore City for conspiracy. There are four counts in the indictment, the first of which charges

"that on the sixth day of October, in the year of our Lord nineteen hundred and fourteen, there was in the First Precinct of the Third Election District of Anne Arundel County, in the State of Maryland, a general registration of voters as by law provided, and that there was then in the said precinct of said election district of said county a meeting of a Board of Registry, duly appointed, qualified and organized, held for the purpose of said general registration of voters in said precinct of said election district of said county, as by law provided;

"And that Edward J. Simond, otherwise called Edward J. Simon, late of said city, on the said sixth day of October, in the year of our Lord nineteen hundred and fourteen, at the city aforesaid, unlawfully did con-

spire, combine, confederate and agree with Jacob
Knight, Frank S. Revell, William J. Fitzpatrick and
George L. Noel to procure unlawfully and fraudulently
to register in said election precinct, that is to say, in
said First Precinct of said Third Election District of
said county, divers persons not then having a legal
right to register therein; against the peace, govern-
ment and dignity of the State."

The second count is the same, except it alleges that the
traverser unlawfully did conspire, etc., with said four persons
"and with certain other persons whose names are to the jurors
aforesaid unknown, to procure unlawfully and fraudulently to
register," etc. The third count alleges that the traverser un-
lawfully did conspire, etc., with the four persons named "to
procure divers persons unlawfully to register in and under
certain names, not the names of such persons to be procured
to register, at the general registration of voters aforesaid, and
at the meeting of the said Board of Registry so held for the
purpose of said general registration of voters, in said pre-
cinct," etc. The fourth count is the same as the third count
except it alleges that the traverser unlawfully did conspire,
etc., with those four "and with certain other persons whose
names are to the jurors aforesaid unknown, to procure divers
persons," etc.

The defendant made a demand for a bill of particulars,
which was refused. He demurred to the indictment, and
each count thereof, and the demurrer was overruled. He then
entered a plea of not guilty and upon a trial before a jury
was convicted. After motions for a new trial and in arrest
of judgment were overruled, judgment was entered and he
was sentenced to confinement in jail for one year. From
that judgment this appeal was taken. In addition to the rul-
ings on the demurrer and the demand for a bill of particulars
there are forty-one exceptions in the record presenting the
rulings of the Court in reference to evidence.

1. There can be no difficulty about the demand for a bill
of particulars, as that is a matter generally resting within

the sound discretion of the trial Court, *Lanasa* v. *State,* 109 Md. 602, and there is nothing in this case to bring it within any exception to the rule.

2. Section 89 of Article 33 of the Code provides:

"If at any general registration of voters or at any meeting of a Board of Registry held for such purpose or for revision thereof, as provided in this article, any person shall falsely personate a voter or other person, and register or attempt or offer to register in the name of such voter or other person, or if any person shall register or attempt to make application to register in or under the name of any other person, or in or under any false, assumed or fictitious name or in or under any name not his own; or shall register in two election precincts; or having registered in one precinct shall attempt or offer to register in another; or shall fraudulently register or attempt or offer to register in any election precinct, not having a legal right to register therein * * * every such person, upon conviction thereof shall be punished by imprisonment in jail or in the penitentiary for not less than six months nor more than five years."

Objection is made to the first and second counts because they, to quote the brief, "do not sufficiently aver the alleged offense in that they do not charge: 1. At *what registration* the traverser procured unlawfully to register divers persons; nor 2. Before what board this unlawful registration was had; nor 3. The *purpose* of said registration." In the first part of those counts, it is distinctly alleged that there was on the 6th day of October, 1914, in the precinct named *a general registration* of voters as by law provided, and that there was then in said precinct a meeting of the Board of Registry duly appointed, qualified and organized, held *for the purpose* of said general registration of voters in said precinct, as by law provided; and it then goes on to allege that the traverser on *the said* sixth day of October, 1914, unlawfully did conspire, etc., with the four named "to pro-

cure unlawfully and fraudulently to register in *said election precinct,* that is to say, in *said* first precinct of said third election district of said county, divers persons *not then* having a legal right to register therein." It might perhaps have been better to have gone on to state, as was done in the, third and fourth counts, "at the general registration of voters aforesaid," etc., but the traverser could not possibly have been left in doubt as to *what registration, what board* or *what purpose* was meant. The prior part of those counts of the indictment had informed him of all that was necessary, and there could have been no possible reason for stating what was alleged in that part of the indictment if the latter part referred to some other registration, board, etc. The State was called upon to prove the facts set out in the first part just as it would have been if they had been repeated in the latter part of the counts. There can be no question about the third and fourth counts, and we will not refer to the demurrer further, except to say that in our judgment the cases of *State* v. *Buchanan,* 5 H. & J. 317; *Lanasa* v. *State,* 109 Md. 602, and *Garland* v. *State,* 112 Md. 83, fully sustain the sufficiency of this indictment.

3. It would prolong this opinion beyond a reasonable length to discuss separately each exception, and, as far as can be conveniently done, we will group them. The first was taken in course of the opening statement of the attorney for the traverser. Without quoting all that was said by him, some statements of law by him were unquestionably not "entirely accurate in every respect," to use the language of the trial Judge. It may be that the attorney intended them to be qualified by what he said at other places—that the traverser could not be convicted by the *uncorroborated* or *unsupported* testimony of the co-conspirators—but he had at times omitted that qualification, and had also given as one reason for the rule, "that a man might come in and say that an innocent man was a party to the conspiracy, and would procure immunity for himself; because, when he takes the witness stand, he is immune." That is not the law of this

State, and such a rule would be a dangerous one to announce, as thus broadly stated. There was nothing in the case to show that there was any understanding or agreement with the prosecuting officer, approved by or known to the Court, that either of the alleged co-conspirators should be immune if he testified fully and truthfully as to the matter charged, as was spoken of in *Lowe* v. *State,* 111 Md. 1, and there is nothing in that opinion which would justify such a startling and dangerous proposition as that just quoted from the opening statement. That opinion concludes by showing that even under the circumstances of that case, if the State's Attorney declined to discontinue the case or the Governor declined to grant a pardon, the Court would be relieved of further responsibility, but it was not suggested that it could give relief. When, then, objections were made to the statement, the Court might have been even more emphatic than it was in its disapproval. CHIEF JUDGE ALVEY said in *Garlitz* v. *State,* 71 Md. 293, that it was "certainly the right of a Judge, and it may often be his imperative duty to exercise" the right to give his full and emphatic dissent from the unwarrantable contention of counsel while arguing a question of evidence before the Judge, "in a very positive and emphatic manner." That was said by him in reference to a trial for murder. If it can be done during an argument before the Judge on a question of evidence, surely it can be during an opening statement, as otherwise a jury may be utterly misinformed as to their duties.

We have thought it proper to say this much, but if there could have been any possible injury done by the very moderate statement of the Judge, immediately following the exception there appear statements of the attorney and of the Court which removed all possible danger of the traverser being injured by anything presented in the first bill of exceptions, and hence we need not say more on the subject.

4. Before passing on the other exceptions it will be well to recall some of the leading facts disclosed by the record, in order that the questions raised may be better understoood.

The traverser had conducted a saloon at Curtis Bay, in Anne Arundel County, about six years. He bought a place in Stony Creek and moved there the latter part of March or first of April, 1914. He had a hotel there and also ran a general store. On his place is a steamboat wharf at which the Stony Creek boat stops. He had been registered at Curtis Bay, but after he moved to Stony Creek he registered in the first precinct of the third district of Anne Arundel County. The general registration days in 1914, for registering voters in that county, were September 22nd and 23rd and October 6th and 7th. Jacob Knight and George L. Noel, two of those named in the indictment, with whom Simond was alleged to have conspired, had been indicted and plead guilty prior to the trial of Simond. Mr. Revell, another named in the indictment, who was a member of the State Central Committee and was active in getting voters to register, had not then been tried.

Noel was called by the State. He testified that he lived at 300 East Hamburg street, Baltimore, and that he was registered in the 24th Ward of that City. He said he had known the traverser about fifteen years and had done some sign-painting for him at his place in Stony Creek; that on Monday, October 5th, he met him on Light street in Baltimore and had a talk with him about some work; he said: "I saw him later in the day and he told me to meet him at Ferry Bar at half-past eight, and I met him and there was a boatload of men there and we all went together." He was asked: "What, if anything, did he say he wanted you to do down there when he met you?" The Court overruled an objection to that question, and that ruling constituted the second exception. As the witness replied: "He told me he was going to have a registration down there, and he asked me to come down and register"; and furthermore that he did go down, and when he got to Ferry Bar "he had a boatload of men there, some drunk and some sober, and we all got on the boat and went down," there can be no question about the relevancy of the inquiry and the objection was undoubtedly

properly overruled. The third exception was to the question, "He said he was going to have registration down there?" He replied to that: "He told me to try to get some men to go along down. I said, all right, I would if I could, but I did not ask him about it. He said he would be up the next morning and see me, and he came up the next morning." While that question repeated what he had already testified to, it was not reversible error to allow it to be asked. Noel then said the traverser came to his house about eight o'clock on Tuesday morning; they had a couple of drinks at a saloon, and there were five or six men there—one named Treakle, one named Carl, and others whose faces he knew but not their names. Simond called him outside and said: "Don't forget, George, and I said, 'All right, I will be there.'" "He asked me if I was coming down; I said, Yes. He said: 'If you see anybody you know, ask them to come along, but don't coax anybody.' I said: 'All right,' and he gave me a dollar and I went and spent it for booze." He and Treakle walked out of the bar, went down to Light street and on their way met Carl, who said: "'Where you fellows going?' I said, 'Stony Creek.' He says: 'Can I go along?' I said, 'I don't care a d—— who goes.'" That answer was objected to, and the fourth exception was taken to the action of the Court in overruling the objection. As Noel was one of the alleged conspirators we can see no objection to that ruling. The evidence tending to show a conspiracy which had already been offered was ample to justify the admission of his statements under such decisions as *Bloomer* v. *State,* 48 Md. 521, and *Lawrence* v. *State,* 103 Md. 17. The witness then testified that Carl went down with them. They went to Ferry Bar on the car, and the next car brought "a bunch of fellows down." He said Simond put one-half of the men in a boat and sent them across the river, and the boat came back and the other half went over. He also said Simond telephoned over to see if everything was all right, and stated he had just had Sheriff Revell on the phone and everything was all right; that after that the fellows did not hesitate to go. He was

asked if he heard anyone say anything about money before
they went across, and replied: "Yes; Bud Abbott spoke up
and said, 'What are we going to get for this?'" An excep-
tion was taken to allowing that question. The answer shows
its relevancy, as he testified, "Simon said, 'Well, g—— d——
it, I will give you two dollars; will that satisfy you?'"
There certainly can be no objection to that, which consti-
tuted the fifth exception. In the sixth, Noel said 'he regis-
tered in the name of Samuel Kelley, signed the registra-
tion book, and the traverser objected to exhibiting the regis-
tration book to him, but that needs no comment, as it was
clearly admissible for the purpose of corroborating Noel, as
well as for other reasons. The Court struck out the objec-
tionable part of the seventh. The eighth, ninth and tenth
show conduct of traverser which clearly reflected on his
guilt. The eleventh is similar to the sixth. The twelfth and
thirteenth were in regard to Simond trying to engage the
boat of one Thomas W. Johnson for the next registration.
There can be no difficulty about that, excepting there was
some question as to the date. As on motion to exclude the
testimony in the fourteenth exception, the Court said it would
exclude it unless the State proved that the last registration
day was subsequent to the conversation, and as the State did
subsequently offer evidence tending to further prove that,
there was no error in those rulings. In the fifteenth, six-
teenth, seventeenth and eighteenth the clerk to the Super-
visors of elections was asked to identify the registration book
of the precinct in question, to name the board of registry for
that precinct, to name the days of registration, and was asked
whether any new names could be put on the book on the
day of revision. There was no reversible error in any of the
rulings in those exceptions. It may be said that the statute,
and not the clerk, should have been relied on to prove
whether any new names could be added on revision day, but
the State was simply endeavoring to show the time of the
last registration, and the traverser could not possibly have

been injured by letting the clerk say what the statute said, as there was no doubt about it. In the nineteenth the motion to strike out the evidence referred to in the fourteenth was finally overruled. There was no error in that. The twentieth and twenty-first were in reference to Mr. Revell engaging teams of W. T. Moore to bring men from Stony Creek and to his saying he had just received a telephone message. As Mr. Revell was alleged to be a co-conspirator, there can be no doubt about that evidence being admissible, although it was not important. The twenty-second was to what Simond said about having a launch for the next registration day, October 6th. The twenty-third and twenty-fourth could do no possible harm, but might have helped the traverser, if they had any effect. They simply showed that Mr. Revell was trying to get men registered who had the right to register. The twenty-fifth was to allowing the witness Treakle to say whether Noel said anything to him on Monday about the registration. He replied: "He said he was going to take a little trip the next day. He didn't tell me to register." He immediately followed that by saying that Noel told him Simond would be around the next morning, and that Simond came that morning, "asked him to take a trip down to Anne Arundel and they would have a little good time, as they were going to have a fake registration." He corroborated Noel on several matters. There was no error in the exception. The objection in the twenty-sixth was to asking Treakle whether anyone raised the question about how much money they would get. What we have said about the fifth exception is sufficient. As the Court said the question in the twenty-seventh was immaterial, and the State's Attorney said he would strike it out, it would be a waste of time to discuss it. The twenty-eighth was of but little consequence, but admissible. There can be no valid objection to the twenty-ninth. The objection in the thirtieth was to ruling out a question asked Jacob Knight whether he was arrested on September 25th, 1905, for being drunk on the street, fined

and sent to jail. Although this Court said in *Smith* v. *State,* 64 Md. 25, that a witness could be asked whether he had ever been confined in jail, and in *McLaughlin* v. *Mencke,* 80 Md. 83, whether he had been in jail and for what, it would be certainly carrying the rule to its limit to ask a witness if he had been arrested ten years before for being drunk and sent to jail. The object of such testimony is to reflect upon the credibility of the witness, and it would be pretty close to reflecting upon the intelligence of the jury to suppose they would be influenced in passing on the credibility of a witness by evidence of such an incident happening ten years before. But regardless of that, could that evidence possibly have any effect, or be of use to any twelve men fit to sit in a jury box, when the witness had acknowledged that he had registered fraudulently and was then confined in jail? The law should not thus be made so helpless as to require a judgment to be reversed for that ruling, under the circumstances, even if conceded to be erroneous.

The objection in the thirty-first exception to the admissibility of the certificate of the Board of Registry was not well taken. It was followed up by evidence that the registrar, who testified to his own signature, had taken the book to the Board of Supervisors of Elections. The certificate is in the form prescribed by section 24 of Article 33. In the thirty-second exception the object of the State was to show flight after a warrant was issued for the traverser, and the thirty-third in explanation of what the witness had previously said. The thirty-fourth, thirty-fifth and thirty-sixth exceptions can not be material in any way. The witness Revell did testify, and therefore any warnings that were given him in reference to his right to refuse to answer any questions which might incriminate him were of no practical importance. The thirty-seventh exception was taken to admitting the registration book and the signature of the witness Watts, who had registered as Keeler, for comparison by the jury. In the thirty-eighth exception objection was made to remarks

of the Court in which the Judge expressed his views on certain questions. As he had not distinctly informed the jury that what he said was merely advisory, the Deputy State's Attorney called his attention to that fact, and the traverser excepted to that action, which is the thirty-ninth exception. The Court then stated when it was brought to his attention: "That is perfectly proper. It follows from the rule that the jury are the judges of the law and of the facts. Any instructions which the Court has given are advisory merely. You are the judges of the law and of the fact." That was in the fortieth exception, and sufficiently corrected any error which might have previously existed. The forty-first exception arose in this way: After the jury had retired and had been out for some time, the foreman wrote to the Court: "Should the verdict be on any particular count, or does the first count cover all others?" The Court answered, in writing, as follows: "You may find a verdict of 'Guilty' merely, or of 'Guilty on' one or more counts, specifying which ones; and you may find a verdict of 'Not Guilty' merely, or of 'Not guilty on' one or more counts, in conjunction with the finding of guilty on others." There was no error in that instruction.

We have thus as briefly as we deemed proper referred to the various exceptions. We have not attempted to refer to all of the evidence offered by the State tending to prove the conspiracy, and although the traverser and several of those alleged to be co-conspirators denied the conspiracy and contradicted much of the evidence offered on the part of the State, the jury found the traverser guilty. It was the province of the jury to determine his guilt or innocence, and as we find no reversible error in any of the rulings of the Court the judgment must be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*