# MADISON DEVAN *v.* STATE OF MARYLAND

[No. 288, September Term, 1972.]

*Decided February 23, 1973.*

The cause was argued before MENCHINE, SCANLAN and DAVIDSON, JJ.

*Russell J. White* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Joseph Rouse, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

On July 28, 1971, at 5:00 p.m., William Cartman entered his Ford automobile in the parking lot of the Reisterstown Plaza Shopping Center. A man stuck a gun in his side through a window of the vehicle. Ordering Cartman to move over, the gunman and another man entered the vehicle. Cartman was ordered to give up his wallet—a card case without money in it—and then to give up his money. His watch then was taken and the car driven from the parking lot with its owner now an unwilling passenger. Proceeding along city streets, the car ultimately was stopped at Greenspring Avenue and Cold Spring Lane where Cartman was ordered from the vehicle. Cartman called the police and while still in a police car completing a full description of the offense, a radio report came over the air that "they had located my car in front of a house off of Druid Park Drive." Taken immediately to that location, Cartman identified his vehicle. After discussions with children in the neighborhood, police entered a dwelling after permission to do so had been granted by the owner.

On entry, police observed one Hargrove and the appellant in the dining room. They fitted the description previously given to police. A set of keys belonging to a Ford was in front of Hargrove. Appellant and Hargrove were arrested and searched. A wallet containing Cartman's driver's license, registration card, a race track identification card with his picture on it, and other personal papers of Cartman, were taken from the pocket of the appellant. A .22 caliber starter pistol was found in a trash can in the hallway after it was pointed out to police by the property owner. The legality of the arrest and consequent search is not contested. Convicted of armed robbery, Madison Devan appeals.

Hargrove and Devan both were indicted for the robbery with a dangerous and deadly weapon. Hargrove's case was the first called for trial. Represented by counsel, he entered a plea of guilty before Judge Solomon Liss.

Because the appellant relies heavily upon the later use by the State of Hargrove as a witness, it is necessary to state the background of knowledge possessed by the State at the time it offered Hargrove as a witness.

At the Hargrove trial before Judge Liss a statement of facts was read by an assistant state's attorney that included the following:

> "At that time, Mr. Hargrove, the defendant, pointed a gun at Mr. Cartman, and said, 'Move over,' and got into the car of Mr. Cartman. He then said, 'Open the other side of the door and let this other fellow in. Mr. Cartman complied with the demand *and let the other man, Mr. Devan come into the other side of the car."* [Emphasis added]

At a later point in the same hearing Judge Liss addressed Hargrove as follows:

> "THE COURT: All right. Now, Mr. Hargrove, I understand that you have agreed that you will testify in the pending case involving Mr. Devan. I am going to withhold sentence until that case has been disposed of, and then we will bring you back here and then dispose of your case."

Uncertainty arose in the mind of State's counsel about the use of the witness Hargrove because the witness would not discuss the case with the assistant state's attorney before trial. This was brought to the attention of the trial judge and to counsel for Devan, with the result that inquiry was made to Hargrove that included the following:

> "Q You were in Part III this morning before his Honor, Judge Liss?

A  Yes, I was.

Q  At that time, you pleaded guilty to the first count of Indictment 3356, robbery with a deadly weapon, did you not?

A  Yes, I did.

* * *

Q  Judge Liss was present in the courtroom this morning, was he not?

A  Yes, he was.

Q  Was Mr. Schlossberg present?

A  Yes, he was.

Q  Was I [assistant state's attorney] present?

A  Yes, you were.

* * *

Q  What else did I, in fact, say to Judge Liss this morning involving your case, what you would do?

* * *

Q  In your presence.

A  That I would do?

Q  That is correct, Mr. Hargrove.

A  Testify or something.

Q  Testify in what?

A  To my case."

After further inquiry, Judge Thomas then inquired of the assistant state's attorney:

"* * * has he indicated to you since your conversation this morning that he was not going to testify that Madison Devan was —

MR. ROUSE:     He didn't indicate that he wasn't going to testify, no.

THE COURT:     As far as you know, he is going to testify that Madison Devan was the man?

MR. ROUSE:     That is correct."

The State then directed the following questions to Hargrove:

"Q  Was anybody else involved in this holdup?
THE WITNESS:    Yes, it were.
MR. ROUSE:      Can you tell his Honor,
                Judge Thomas, who that
                person was?
A               It was a fellow named
                Bernard."

The State forthwith desisted from further interrogation of the witness and was permitted, over objection, to call the official court reporter who had recorded the proceedings before Judge Liss. He read into the record the quotations previously set forth herein.

Appellant argues that surprise had not been shown; that no foundation for impeachment had been laid and that there had been no contradictory statement by the witness, thus no impeachment of him.

### Surprise

*McCormick, Handbook of the Law of Evidence* (1954) declares in § 38:

"The common law rule forbidding a party to impeach his own witness is of obscure origin but probably is a late manifestation of the evolution of the common law trial procedure from an inquisitorial to a contentious or adversary system." [Page 70]

In the same section it is noted that proposed uniform rules recommended abandonment of the common law rule and pointed out at page 73:

"* * * it seems that the rule against the showing of the prior statements of one's own witness, to aid in valuating his testimony, is a serious obstruction to the ascertainment of truth."

It is of further interest to note that the Rules of Evidence for United States Courts and Magistrates, adopted

by the Supreme Court of the United States on November 22, 1972, included Rule 607 that reads as follows:

"The credibility of a witness may be attacked by any party, including the party calling him."

*Wigmore on Evidence*, Chadbourn Revision, Vol. III A, § 903, is so critical of the old common law prohibition against allowing prior self-contradictions by a party's own witness that he says at page 672:

"There ought to be no hesitation upon the propriety of this evidence" and points out that: "The exclusion of the evidence would be unjust (1) in depriving the party of the opportunity of exhibiting the truth and (2) in leaving him the prey of a hostile witness."

*Jones on Evidence*, Sixth Edition, § 26.11, joins the chorus of criticism of the old rule by declaring at page 196:

"* * * many decisions have announced disapproval of the orthodox rule, or have approved the rule generally and have recognized exceptions to it in certain circumstances, as, for example, where surprise, hostility or deceit is disclosed by the testimony of the witness.

If a party has been misled and surprised by the testimony of his witness, it is held that he may impeach the witness by proving his former contradictory statements."

That Maryland adheres to the doctrine last above stated is made crystal clear by the decision in *Meyerson v. State*, 181 Md. 105, 28 A. 2d 833, wherein it was said at page 108 [834]:

"The rule in this State is that such a question is admissible to explain why the party called the witness, and not necessarily to impeach her, on the theory that it would be grossly unfair to permit a witness to entrap a party into calling her, having made a statement favorable to that

party, and then when called and accredited by that party, makes a statement at variance with the previous statement and against that party's interest, to deny that party the privilege of showing that he was induced to do so by a previous statement of the witness, he having a reasonable belief that this witness, when called to testify, would repeat that statement. * * * *It should be left to the discretion of the trial judge to allow it to be done."* [Emphasis added]

Again, in *Hernandez v. State,* 7 Md. App. 355, 365, 255 A. 2d 449, 455, we said:

"While a party ordinarily may not impeach his own witness by proof of prior statements which are inconsistent with, or contradictory to, his testimony at trial, where such party satisfies the court that he has been taken by surprise and that the testimony is contrary to what he had a right to expect, *it is within the sound discretion of the trial court to determine whether or not proof of prior inconsistent statements should be permitted."* [Emphasis added]

Accordingly, it is plain that whatever may be the continued viability of the ancient rule prohibiting impeachment of one's own witness, it is very clear that in Maryland a witness will not be permitted to obscure or prevent the emergence of truth.

Appellant argues that there was no basis for the contention that the State was surprised or that deceit by the witness was shown. In advancing this contention, appellant points out that no personal statement was made by him during the course of the proceedings before Judge Liss and thus no basis for the conclusion that he subscribed to the statements there made by others. The trial judge, seeking objectively to pass upon the question whether the State had been surprised said: "I will get

the reporter to come over here and read the exact language and put it all on the record as to what was said and then we can determine if the State is really surprised by the testimony of this witness, and if it is, then, of course, I will permit him to impeach the witness." After the court reporter had detailed the evidence presented before Judge Liss, the trial judge below said: "Where * * * a plea of guilty is offered and the statement of facts given by the State indicated that another person was in the car and further after the statement of facts was given counsel for the defendant in that case, in the presence of the defendant, indicated to the Court that the statement of facts was correct, it seems to me under those circumstances where the defendant now indicates that the statement of facts given were not correct that the State can properly claim surprise and therefore impeach its witness." We agree.

It is no answer to suggest that Hargrove himself has made no prior direct statement in conflict with his testimony.

In *Miller v. State,* 231 Md. 215, 218, 189 A. 2d 635, 636, it was said:

"It is generally held that if a statement is made by another person in the presence of a party to the action, be it civil or criminal, containing assertions of facts which, if untrue, the party would under all the circumstances naturally be expected to deny, his failure to speak is circumstantial evidence that he believes the statements to be true, and his conduct is thus receivable against him as an admission of such belief."

It is true that in *Miller, supra,* judgment was reversed upon the ground that the accused was not bound to reply to an incriminating custodial extra-judicial statement by an accomplice. A very different situation existed when Hargrove stood mute. His plea of guilty before Judge Liss; the statement of facts recited in his and his

counsel's presence; the trial judge's comments about Devan's connection with the robbery and expressed belief that Hargrove would so testify, constituted, by circumstantial evidence, acknowledgment by Hargrove that the statements were true and that he would testify in accordance with their tenor. Thus, by standing mute, his conduct naturally would be interpreted by the State as his statement that Devan participated in the robbery and that Hargrove would so testify. This is a totally different circumstance than where an accused is inferentially compelled to incriminate himself by silence when another condemns him. Compare: *Barnes and Burgess v. State,* 1 Md. App. 123, 227 A. 2d 763; *Ewell v. State,* 228 Md. 615.

It is quite plain from the oral opinion of the trial judge, that the conviction of Devan was in no way grounded upon the testimony of the witness Hargrove, whether directly given in the subject case or inferentially in the hearing before Judge Liss. Thus, there is no violation of the explication of the legal effect of evidence introduced under the "surprise" rule declared in *Vandergrift v. State,* 13 Md. App. 277, 281, 282 A. 2d 528, 530, that:

> "* * * it is firmly established in this jurisdiction that '[p]rior statements produced at the trial to show the party calling the witness has been surprised by the witness' testimony, and why the witness was called, are not probative evidence on the merits and are not to be treated as having any substantive or independent testimonial value.' " [Citation omitted]

There was clear supporting evidence in the record for the finding and declaration of the trial judge that the State was surprised by the testimony of the witness Hargrove. Such an issue under the authorities is a matter directed to the sound discretion of the trial judge. We find no abuse of that discretion.

## Foundation

Appellant contends that there was a failure to lay a foundation for impeachment of the witness Hargrove.

Wigmore says that the rule requiring preliminary warning is "by no means an immemorial tradition * * *. The rule, as a rule, may be said to have had its birth with the response of the judges in *The Queen's Case*.[1] * * * This utterance is said to have come as a surprise to the Bar; and up to that time no established requirement of the kind existed." *Wigmore, Chadbourne Revision,* Vol. III A, § 1026, p. 1021.

It is plain, however, that Maryland at an early date adopted the rule of the *Queen's* case in *Brown v. State,* 72 Md. 468, 475, 20 A. 186, 188, wherein it was said: "* * * in order to lay the foundation for such evidence the witness must first be interrogated as to the time, place, and person to whom such contradictory statements were made." That opinion explicated the rule by saying at the same page: "This is but fair and just to the witness, in order that he may be enabled to refresh his recollection in regard to such statements, and afforded the opportunity of making such explanations as he may deem necessary and proper."

In *Sanders v. State,* 1 Md. App. 630, 232 A. 2d 555, we reviewed many cases wherein the requisite foundation for impeachment evidence had been considered. In that case we reversed, even though foundation for impeachment had not been laid during the original testimony of the witness, because it appeared from the record that defense counsel had been denied permission to recall, for purposes of laying such foundation, the witness proposed to be impugned.

In *Sellman v. State,* 232 Md. 344, 348, 192 A. 2d 788, 790, the State was permitted to impeach a witness called by it where:

"* * * it was apparent from the prosecutor's persistent questioning of Mrs. Lee that he had

---

1. 2 Brod. & B. 284 (1820).

knowledge that she had heard a conversation
* * * material to the case. It was not until the
witness had been afforded ample opportunity to
relate the details of the overheard conversation
and had, in effect, refused to do so, that the
State claimed surprise and requested permission to cross-examine her."

*Sanders* and *Sellman*, both *supra*, make manifest that there is no unvarying formula or ritual required for the establishment of a foundation to impeach. It is required that a witness be informed, sometime during the course of his testimony, that his interrogator is aware of and relying upon a statement the witness is claimed to have made at a particular time and place, to a particular person. The single purpose for requiring such foundation is to accord the witness the opportunity to reflect upon the prior statement so that he may admit it or deny it, or make such explanation of it as he considers necessary or desirable.

It is true that in the subject case Hargrove's acknowledgment of the statement made in Judge Liss's court occurred before, rather than after, inconsistency became apparent. This circumstance, however, in no way deprived the witness of his opportunity to admit, deny or explain the prior statement. His subsequent lengthy interrogation by both the defense and the State makes this apparent. Thus the witness was enabled to represent to the trier of facts that his courtroom testimony was true and that the events occurring in Judge Liss's court did not tarnish it in any respect. This is the purpose to be subserved by the rule. A proper foundation was laid.

### Impeachment

As previously stated herein, the events occurring in Judge Liss's courtroom were susceptible to the interpretation circumstantially that Hargrove agreed that the statements implicating the appellant were true. The trier of facts, of course, also had a right to conclude

after consideration of all of Hargrove's testimony, that his courtroom testimony was true and wholly untarnished. He thus declared his decision: "The Court under the circumstances of this case finds Mr. Hargrove's testimony unbelievable and attaches absolutely no weight to his testimony on the stand."

The cold record itself tends to demonstrate the floundering of Hargrove as he labored to make flesh of the ethereal "Bernard." The trial judge had the added advantage of hearing and observing the witness. The credibility of a witness is a matter for the trier of fact. *Melia and Shelhorse v. State*, 5 Md. App. 354, 366, 247 A. 2d 554, 561.

The trial judge declared that the State did impeach the witness. We do not find his judgment to be clearly erroneous. Maryland Rule 1086.

### Sufficiency of the Evidence

Appellant also attacks the legal sufficiency of the evidence to convict.

It has been previously noted herein that the appellant was in possession of recently stolen property at the time of his arrest shortly after the robbery. The only attempted explanation of appellant's possession of that stolen property was through the testimony of the witness Hargrove. As previously stated, that testimony was rejected wholly by the trial judge. The trial judge concluded that appellant's possession of the stolen property was unexplained.

We said in *Boswell and Poe v. State*, 5 Md. App. 571, 577, 249 A. 2d 490, 496:

> "* * * Of course the credibility of the witnesses explaining the defendant's possession of the goods and the weight of the evidence with respect thereto are matters for the trier of fact as in the proof of any other fact."

The unexplained possession of recently stolen goods, standing alone, would suffice to sustain the conviction

for armed robbery with the description of the event shown by this record. *Jones v. State,* 9 Md. App. 455, 265 A. 2d 271.

In *Coward v. State,* 10 Md. App. 127, 130, 268 A. 2d 508, 509, we said:

> "The test of the sufficiency of the evidence in a case tried before the court without a jury is whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged."

The evidence in the subject case falls within that rule of law.

*Judgment affirmed.*