533 A.2d 309

**Leonard Morgan BANE, Jr.**

v.

**STATE of Maryland.**

**No. 338, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Nov. 13, 1987.

136

138

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Alexander Williams, Jr., State's Atty. for Prince George's County, Thomas Krehely and Diane Adkins, Asst. State's Attys. for Prince George's County, on brief, Upper Marlboro), for appellee.

Submitted before BISHOP, BLOOM and WENNER, JJ.

BLOOM, Judge.

Leonard Morgan Bane, Jr. (appellant) was convicted by a jury in the Circuit Court for Prince George's County of breaking and entering,[1] second degree rape,[2] and common

---

1. Md.Ann.Code art. 27, § 31A (Repl.Vol.1982, Cum.Supp.1987).

2. Md.Ann.Code art. 27, § 463 (Repl.Vol.1982, Cum.Supp.1987).

law battery.[3] Sentenced to a total of twenty-three years imprisonment, with eight years suspended, Bane has appealed, asserting:

1. The trial court erred in permitting appellant to be impeached with a prior conviction of breaking and entering.

2. The trial court erred in permitting appellant to be impeached with a prior statement.

We agree with appellant's first assertion of error and consequently we shall reverse the judgments on that basis. Since the ruling complained of in the second issue is one that may recur on retrial, we will address it in this opinion as a matter of judicial economy.

### Impeachment By a Prior Conviction

At the conclusion of the State's cross-examination of appellant, the following colloquy occurred:

THE STATE: Sir, on January 3rd, 1978 when you were represented by counsel, were you convicted of the crime of breaking and entering?

APPELLANT'S ATTORNEY: Objection, Your Honor.

APPELLANT: I'll answer that.[4]

THE COURT: Just a moment. Approach the bench.

[BENCH CONFERENCE]

(THEREUPON, THE DEFENDANT NOT PRESENT AT THE BENCH)

THE COURT: Have you got a certified copy of the record?

THE STATE: Yes, Your Honor.

---

**3.** Because the second degree rape charge involved a proof of force, *see* Md.Ann.Code art. 27, § 463(a)(1), the battery charge was merged into the rape conviction as a lesser included offense. *See, Brooks v. State,* 284 Md. 416, 397 A.2d 596 (1979).

**4.** The State has not argued that appellant's comment constituted a waiving of his counsel's objection. The court apparently did not regard it as a waiver, since it proceeded to rule on the objection.

THE COURT: Let me see what you have.

(THEREUPON, THE COURT VIEWING SAME.) [5]

THE COURT: What is the basis of your objection?

APPELLANT'S ATTORNEY: May I just see that, please? May I see that, please?

THE COURT: Sure.

(THEREUPON, [APPELLANT'S ATTORNEY] VIEWING SAME.)

THE STATE: Your Honor, I would note for the record that I had informed [appellant's attorney] by letter that I intended to use that conviction and I made the certification available to him prior to trial.

APPELLANT'S ATTORNEY: That's absolutely correct.

THE COURT: All right.

APPELLANT'S ATTORNEY: You have the discretion as to whether this comes in, I understand. However, something that happened eight or nine years ago, breaking and entering what I believe to be his sister's house.

THE COURT: I can't go into the details and I'm not about to go into the details. But I consider breaking and entering an offense involving moral turpitude.

APPELLANT'S ATTORNEY: Then I ask you give a cautionary instruction at this time.

THE COURT: No. I will give an instruction at the time I give all the other instructions that they can use this for only the purposes of determining his credibility, and that's it. I always do that. I have no problems doing that. [6]

APPELLANT'S ATTORNEY: All right.

---

**5.** The record does not contain the certified copy of the conviction. The appellant's pre-sentence report, included with the record, reveals that the appellant was convicted of statutory breaking and entering pursuant to Md.Code Ann. art. 27, § 31A.

**6.** At the end of the trial the court did give a cautionary instruction concerning the use by the jury of appellant's prior conviction. *See, Piles v. State,* 233 Md. 487, 197 A.2d 238 (1964).

(BENCH CONFERENCE TERMINATED.)

THE STATE: I'll repeat that question and I would ask you to answer it "yes" or "no."

On January 3rd, 1978 when you were represented by counsel, were you convicted of the crime of breaking and entering?

APPELLANT: Yes, sir, I was.

Appellant contends that the trial court erred in permitting the State to impeach him with the prior breaking and entering charge. We agree.

In this state, it has been firmly established that in criminal cases, when the defendant takes the stand as a witness in his own behalf he thereby places his character in issue and may be asked on cross-examination if he has been convicted of crime. *Burgess v. State,* 161 Md. 162, 155 A. 153 (1931); *Niemoth v. State,* 160 Md. 544, 154 A. 66 (1931); *Boone v. State,* 2 Md.App. 80, 233 A.2d 476 (1967). The defendant is thus subjected to the same rules of cross-examination that govern other witnesses. *Davis v. State,* 237 Md. 97, 205 A.2d 254 (1964); *Allen v. State,* 183 Md. 603, 39 A.2d 820 (1944); *Guy v. State,* 90 Md. 29, 44 A. 997 (1899). But when it is the defendant's criminal history that is being inquired into, the trial court should be mindful that there is more than mere credibility being attacked. A more pervasive potential for prejudice must be considered, namely, the prejudice that is likely to emanate from advising the trier of fact that the very defendant on trial before it is already a convicted criminal. *See Burrell v. State,* 42 Md.App. 130, 399 A.2d 1354 (1979). Such prejudice is especially dangerous when the earlier crime is similar to that for which the defendant is currently being tried. *Id.*[7] As the United

---

7. The danger of a trier of fact drawing an improper inference from evidence of admitted prior convictions has led the Court of Appeals to place restrictions upon the admissibility of such evidence for any substantive purpose. *See, Cross v. State,* 282 Md. 468, 386 A.2d 757 (1978); *Ross v. State,* 276 Md. 664, 350 A.2d 680 (1976). Thus, the fact that the appellant was being tried, *inter alia,* for breaking and entering

States Supreme Court, in *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), observed:

> That a record of prior convictions may actually do more than simply impeach a defendant's credibility has been often noted. *See, e.g.,* C. McCormick, Evidence, § 43, p. 93 (1954):
>
> > The sharpest and most prejudicial impact of the practice of impeachment by conviction ... is upon one particular type of witness, namely, the accused in a criminal case who elects to take the stand. If the accused is forced to admit that he has a "record" of past convictions, particularly if they are for crimes similar to the one on trial, the danger is obvious that the jury, despite instructions, will give more heed to the past convictions as evidence that the accused is the kind of man who would commit the crime on charge, or even that he ought to be put away without too much concern with present guilt, than they will to its legitimate bearing on credibility.

405 U.S. at 482–83 n. 11, 92 S.Ct. at 1019 n. 11.

■ Judge Karwacki, speaking for this Court in *Duckett v. State*, 61 Md.App. 151, 485 A.2d 691 (1985), *aff'd*, 306 Md. 503, 510 A.2d 253 (1986), outlined the Maryland law governing the admission of evidence to impeach a witness, including a defendant-witness, through a showing of his criminal record:

(1) The credibility of a witness is always a relevant issue in any case, civil or criminal;

(2) When a defendant in a criminal case elects to testify in his own defense, he subjects himself to the same rules of cross-examination that govern other witnesses;

(3) Evidence of a witness's prior conviction of an infamous crime is always admissible to impeach his credi-

---

pursuant to Md.Ann.Code art. 27, § 31A would itself be a sound reason for rejecting evidence of a prior conviction of the same offense for purpose of impeachment.

bility regardless of the age of that conviction. Md. Cts. & Jud.Proc.Code Ann. § 10–905 (Repl.Vol.1984, Cum.Supp.1987).[8]

(4) The admissibility of evidence of a witness's prior conviction of a non-infamous crime is left to the sound discretion of the trial judge who must consider the nature of the crime and the length of time since it occurred in determining the relevance of the conviction to the witness's credibility.

61 Md.App. at 153–54, 485 A.2d 691. *See also,* L. McLain, *Maryland Evidence,* § 609 (1987). Therefore, the fact that a witness has been convicted of a crime is admissible to attack the witness's credibility only where the prior conviction was for (1) an infamous crime, (2) a crime involving moral turpitude, or (3) a lesser violation of the law which has some tendency to show that the witness is not to be believed. *State v. Duckett,* 306 Md. 503, 510 A.2d 253 (1986); *Ricketts v. State,* 291 Md. 701, 436 A.2d 906 (1981); *Paschall v. State,* 71 Md.App. 234, 524 A.2d 1239 (1987).

The Court of Appeals, in *Garitee v. Bond,* 102 Md. 379, 62 A. 631 (1905), defined infamous crimes as those crimes of treason, felony, perjury, forgery, and other offenses, classified generally as *crimen falsi,* which impress upon their perpetrator such a moral taint that to permit him to testify in legal proceedings would injuriously affect the public administration of justice. *Accord, State v. Duckett, supra; Ricketts v. State, supra; Paschall v. State, supra.*

 It has never been fully determined what offenses, other than treason or felony, involve such moral turpitude

---

**8.** Section 10–905 reads:

(a) *In general.*—Evidence is admissible to prove the interest of a witness in any proceeding, or the fact of his conviction of an infamous crime. Evidence of conviction is not admissible if an appeal is pending, or the time for an appeal has not expired, or the conviction has been reversed, and there has been no retrial or reconviction.

(b) *Certificate under seal as evidence.*—The certificate, under the seal of the clerk of the court, of the court in which the conviction occurred is sufficient evidence of the conviction.

as to have a legitimate bearing on one's credibility. The term "moral turpitude," while imprecise, connotes conduct which is "base or vile and contrary to the accepted and customary conduct between men." *State v. Duckett, supra; Ricketts v. State, supra; Dental Examiners v. Lazzell,* 172 Md. 314, 191 A. 240 (1937). Moral turpitude suggests, therefore, "such a disregard for social values on the part of the perpetrator, that one could reasonably infer that such a person's testimony is suspect." *Ricketts,* 291 Md. at 711, 436 A.2d 906. Finally, it has been held that to constitute moral turpitude the conduct involved must be intentional and not merely an act of negligence or an accident. *Ricketts, supra; Lazzell, supra; Paschall, supra.*

 Crimes that are determined to be infamous or involving moral turpitude are always admissible as impeachment devices; the admission into evidence of a witness's prior conviction for a non-infamous crime is left to the sound discretion of the trial court. *Cousins v. State,* 230 Md. 2, 185 A.2d 488 (1962); *Cason v. State,* 66 Md.App. 757, 505 A.2d 919 (1986); *Burrell v. State, supra.* To be admitted for impeachment purposes, such a lesser crime must taint an individual's credibility. The trial court, when exercising its discretion to admit or exclude lesser crimes as impeachment devices, needs to take into consideration the length of time since the offense occurred and the nature of the offense. *State v. Duckett, supra; Cousins v. State, supra; Paschall v. State, supra.*

 When dealing with the nature of the offense, the trial court must inquire whether the crime proffered for impeachment purposes involves, for example, the element of deceit, lying, or dishonesty which could lead a rational person reasonably to conclude that one who would commit such a crime would be less likely to tell the truth than one who would not commit such a crime. If that inquiry draws an affirmative response, the prior conviction is *prima facie* relevant; if the response is in the negative, however, then

the evidence of the prior conviction should be considered "clearly irrelevant" and thus simply not admissible. *Burrell v. State*, 42 Md.App. at 140, 399 A.2d 1354.

■ Next, the trial court needs to consider when the crime was committed. As a general rule, the farther in the past the crime, the weaker its relevance to present credibility. Judge Wilner, speaking for this Court in *Burrell v. State, supra*, likened the time requirement to the law of gravity. He noted:

[The time requirement] is somewhat akin to the law of gravity: the farther away one is from the mass, the less is its gravitational pull or influence. But, like another aspect of the law of gravity—the larger the mass, the stronger is its pull at any given distance—so it is that the more enormous the earlier crime (*i.e.*, the more it embodies and therefore exudes dishonesty), the more likely will be its relevance, and thus its admissibility, even after the elapse of long intervals. With respect to other than infamous crimes, therefore, admissibility for impeachment purposes seems to be a function of a more or less direct ratio between the degree of dishonesty inherent in the earlier crime and the time elapsed since its commission. The greater the degree of dishonesty inherent in the earlier crime, the longer is the period of time since its commission that the conviction remains relevant, and therefore admissible, for impeachment purposes.

42 Md.App. at 140–41, 399 A.2d 1354.

■ In conclusion, then, the law in Maryland relative to impeachment by a prior conviction bases its emphasis on the nature of the crime. The crime must be an infamous crime, one involving moral turpitude, or a lesser crime of a type which tends to indicate that the person convicted should not be believed. Therefore, it is essential that the crime itself *clearly* identify the nature of the prior conduct of the witness in order to show that he, as a result of his conviction of that crime, is unworthy of belief. *See, State v. Duckett*, 306 Md. at 508, 510 A.2d 253.

*Breaking and Entering—Md.Ann.Code art. 27, § 31A*

Appellant contends that statutory breaking and entering is not an infamous crime and thus could not have been admitted for impeachment purposes pursuant to Md.Cts. & Jud.Proc.Code Ann. § 10–905, *supra.* He further asserts that statutory breaking and entering requires no specific intent, and the trial court should have exercised its discretion to exclude evidence of the conviction. The State argues that statutory breaking and entering is an infamous crime or a misdemeanor involving moral turpitude, echoing the trial judge who, as noted *supra,* stated, "But I consider breaking and entering an offense involving moral turpitude." This divergence of opinion as to the nature of statutory breaking and entering is understandable, since the crime, as pointed out by Judge Moylan, is a "late starter in the burglary field...." Moylan, *The Historical Intertwining of Maryland's Burglary and Larceny Laws or the Singular Adventure of the Misunderstood Indictment Clerk,* 4 U.Balt.L.Rev. 29, 31 (1974).

At common law, burglary is defined as the breaking and entering of a dwelling house of another by night with the intent to commit a felony therein. *Jennings v. State,* 8 Md.App. 312, 259 A.2d 543 (1969); *Reagan v. State,* 4 Md.App. 590, 244 A.2d 623 (1968); *Hall v. State,* 1 Md.App. 392, 230 A.2d 473 (1967). The requirement that each element of the offense—breaking, entering, dwelling house, nighttime; felonious intent—must be proved created problems for the prosecution when the facts of the case did not dovetail with all the elements of burglary. For instance, in *Dobbs' Case,* 2 East P.C. 513 (1770), the defendant, in the night, broke and entered a stable, within the curtilage of a dwelling, with the intent to disable a race horse. The horse died, and Dobbs was subsequently convicted of the felony of maliciously killing the horse. In the trial for burglary, however, he was held not guilty "for his intention was not to commit the felony, by killing and destroying the horse, but a trespass only to prevent his running; and therefore

no burglary." [9] As a result of these problems, legislatures enacted statutes to make criminal conduct closely related to burglary that could not be prosecuted as burglary. *See, e.g.,* Md.Code Ann. art. 27, § 30 (Breaking dwelling with intent to steal or commit felony); Md.Code Ann. art. 27, § 31B (Breaking and entering storehouse, etc., of another); Md.Code Ann. art. 27, § 32 (Breaking outhouse, etc., or into boat with intent to commit felony); Md.Code Ann. art. 27, § 33A (Breaking into building or boat with intent to steal). *See generally,* R. Perkins & R. Boyce, *Criminal Law,* 246–72 (3d ed. 1982).

■■■ In 1973, the Maryland Senate Judicial Proceedings Committee received testimony from the State's Attorneys of various counties and Baltimore City that there was a need for a burglary offense of less severity than common law burglary or any of the then applicable statutory burglary-type crimes. The existence of such an offense, it was argued, would facilitate prosecutors in the handling of cases in which the felonious intent, a required element of common law burglary and all of the then statutory burglary offenses, of the intruder could not be clearly shown. Senate Bill 218 was drafted and submitted to the 1973 General Session with the intent of creating a criminal offense to comply with the State's Attorneys' wishes. Legislative Council of Maryland, Report to the General Assembly of 1973, at 122, item no. 187 (1973). *See also,* 1973 Journal of Proceedings of the Senate of Maryland—Regular Session

---

**9.** Other elements of common law burglary have also presented problems. *See e.g., Marston v. State,* 9 Md.App. 360, 264 A.2d 127 (1970) (mere fact that a building was designed as a dwelling is not controlling, for burglary prosecution purposes, when its later use is no longer a dwelling); *Wiggins v. State,* 4 Md.App. 95, 109–10 n. 9, 241 A.2d 424, *cert. denied,* 251 Md. 753 (1968) (crime of breaking and entering a dwelling house was not burglary when police report of crime was received several minutes before sunset according to Almanac Office of Naval Observatory); *Reagan v. State,* 2 Md.App. 262, 234 A.2d 278 (1967), *app. after remand,* 4 Md.App. 590, 244 A.2d 623 (1968) (breaking does not include an entrance through an open door or window or an entrance by a person having authority to do so at that particular time).

136.[10] Senate Bill 218 was passed as introduced, without any amendments, by both houses of the Maryland General Assembly. *See,* 1973 Journal of Proceedings of the Senate of Maryland—Regular Session 136, 255, 274; 1973 Journal of Proceedings of the House of Delegates of Maryland—Regular Session 280, 2444, 2593. Governor Marvin Mandel signed the enrolled bill into law on May 24, 1973. 1973 Md.Laws 661. That law read, as it does now, as follows:

Any person who breaks and enters the dwelling house of another is guilty of a misdemeanor and, upon conviction thereof, shall be sentenced to imprisonment for a term of not more than three (3) years or a fine of not more than five hundred dollars ($500.00) or both.

Md.Code Ann. art. 27, § 31A (Repl.Vol.1982, Cum.Supp. 1987). The gravamen of the offense is the breaking and entering of the dwelling of another. To be convicted of statutory breaking and entering, as is evident from the legislative intent of the bill, no intent to commit a felony or to steal personal property need be shown. *See,* R. Gilbert &

---

**10.** Senate Bill No. 218 read:

AN ACT to add new Section 31A to Article 27 of the Annotated Code of Maryland (1971 Replacement Volume), title "Crimes and Punishments," subtitle "Crimes and Punishments," subheading "Burglary; Breaking and Entering," to follow immediately after Section 31 thereof, providing for the misdemeanor of breaking and entering the dwelling house of another with provisions for penalties upon conviction thereof.

SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That new Section 31A be and it is hereby added to Article 27 of the Annotated Code of Maryland (1971 Replacement Volume), title "Crimes and Punishments," subtitle "Crimes and Punishments," subheading "Burglary; Breaking and Entering," to follow immediately after Section 31 thereof, and to read as follows: 31A.

ANY PERSON WHO BREAKS AND ENTERS THE DWELLING HOUSE OF ANOTHER IS GUILTY OF A MISDEMEANOR AND, UPON CONVICTION THEREOF, SHALL BE SENTENCED TO IMPRISONMENT FOR A TERM OF NOT MORE THAN THREE (3) YEARS OR A FINE OF NOT MORE THAN FIVE HUNDRED DOLLARS ($500.00) OR BOTH.

SECTION 2. AND BE IT FURTHER ENACTED, That this Act shall take effect July 1, 1973.

C. Moylan, *Maryland Criminal Law—Practice & Procedure*, § 11.3 (1983), *see also*, Moylan, *supra*, 4 U.Balt.L. Rev. 29, 31 (1974). The misdemeanor crime of statutory breaking and entering, therefore, is a nebulous one as it relates to the intent of the perpetrator, since no showing of any particular intent is required for a conviction under art. 27, § 31A. All that must be shown is that the perpetrator broke and entered a dwelling place of another.

■ Returning to the facts of this case, the trial judge admitted appellant's prior breaking and entering conviction in order to impeach appellant's credibility because he considered any breaking and entering to be an offense involving moral turpitude. We disagree. Since misdemeanor breaking and entering involves no felonious or larcenous intent, it is a crime of general intent that includes within its scope a variety of acts, including some that are reckless or negligent. *See Ricketts v. State*, 291 Md. at 713, 436 A.2d 906. A conviction for that offense may result either from a well-planned scheme—or merely rash, impetuous conduct of a defendant. While the record before us does not include the underlying facts of appellant's prior conviction, appellant's counsel stated in his objection that appellant had been convicted of breaking and entering his sister's home. For all we can determine from the mere fact of the conviction, appellant might have broken and entered his sister's home to commit a felony or merely to recover his own property. Consequently, the conviction of breaking and entering does not necessarily indicate such "base or vile" conduct as would constitute it a crime of moral turpitude. We hold, therefore, that it is not an offense involving such moral turpitude that evidence of a conviction may be used for impeachment purposes. Nor is it among those crimes classified as *crimen falsi*, which, by their nature, speak directly to the credibility of the offender. While statutory breaking and entering is a lesser offense of the "infamous crime" of burglary, a felony, *Johnson v. State*, 38 Md.App. 100, 379 A.2d 436 (1977), *cert. denied*, 282 Md. 734 (1978), breaking and entering itself is not a felony or an infamous crime.

Therefore, it cannot be used automatically for impeachment purposes pursuant to Md.Cts. & Jud.Proc.Code Ann. § 10–905.

Finally, we do not believe that statutory breaking and entering is among those lesser violations having "some tendency to show that the person charged is not to be believed under oath." *Cousins v. State,* 230 Md. at 4, 185 A.2d 488. This is so because the offense of statutory breaking and entering lacks the proof of any conduct that "could lead a rational person reasonably to conclude that one who would commit such a crime would be less likely to speak the truth than one who would not commit such a crime," *Burrell v. State,* 42 Md.App. at 140, 399 A.2d 1354, and the lack of a requirement of any particular *mens rea* makes it impossible to say that one's conduct in committing that crime renders his credibility suspect. *See, State v. Duckett,* 306 Md. at 509, 510 A.2d 253.

In summary, therefore, we conclude that the trial court was in error in permitting the appellant to be impeached by his prior breaking and entering conviction because breaking and entering pursuant to Md.Code Ann. art. 27, § 31A is neither an infamous crime, nor a crime of moral turpitude, nor a lesser offense of such nature that its commission would impute taint to one's credibility as a witness. Thus, we add Md.Code Ann. art. 27, § 31A breaking and entering to those offenses that cannot be used for impeachment. *See, e.g., State v. Duckett,* 306 Md. 503, 510 A.2d 253 (1986) (assault and battery); *Lowery v. State,* 292 Md. 2, 437 A.2d 193 (1981) (per curiam) (possession of barbiturates); *Ricketts v. State,* 291 Md. 701, 436 A.2d 906 (1981) (indecent exposure); *Nesbit v. Cumberland Contracting Co.,* 196 Md. 36, 75 A.2d 339 (1950) (traffic violations including reckless driving, passing on a curve, failing to stop at a stop sign, and driving without a license or after license is revoked); *Nelson v. Seiler,* 154 Md. 63, 139 A. 564 (1927) (exceeding the speed limit and driving without a license in one's possession); *Paschall v. State,* 71 Md.App. 234, 524 A.2d 1239 (1987) (malicious destruction); *Matthews v. State,*

68 Md.App. 282, 511 A.2d 548, *cert. denied,* 308 Md. 238, 517 A.2d 1121 (1986) (prostitution); *Cason v. State,* 66 Md.App. 757, 505 A.2d 919 (1986) (heroin possession); *Woodell v. State,* 2 Md.App. 433, 439 n. 2, 234 A.2d 890 (1967) (a court martial conviction for disobeying a superior officer while in the military); and *Simond v. State,* 127 Md. 29, 95 A. 1073 (1915) (ten-year-old conviction for drunkenness). *But see, McLaughlin v. Mencke,* 80 Md. 83, 30 A. 607 (1894) (no error in allowing impeachment by conviction for drunkenness).

 Because the court committed prejudicial error in admitting evidence of appellant's prior conviction for purpose of impeachment, we must reverse the conviction and remand for a new trial.

## Impeachment by Prior Statement

We turn now to a discussion of appellant's second complaint. During the State's cross-examination of the appellant, the following colloquy occurred:

THE STATE: And you're saying that the dogs were never placed in the den?

APPELLANT: No, sir.

THE STATE: She's incorrect when she said that?

APPELLANT: Yes, sir. I didn't even—I wasn't even aware she had a den.

THE STATE: Sir, you had been in that house previously; hadn't you?

APPELLANT: Yes, sir, I had.

THE STATE: You knew where every piece of furniture was in that house; didn't you?

APPELLANT: I wouldn't say every piece, no.

THE STATE: Well, sir, on March 14th, 1986, didn't you tell Detective Davidson that you knew where every piece of furniture was in that premises?

APPELLANT: I told him that I could describe the room. Not every piece of furniture or every knickknack or what color the carpet was or anything like that. I

could describe the couch and I could describe the kitchen.

THE STATE: And you didn't know there was a den?

APPELLANT: No, sir.

APPELLANT'S ATTORNEY: Your Honor, may I approach the bench?

THE COURT: Sure. Come up.

(BENCH CONFERENCE)

(THEREUPON, THE DEFENDANT NOT PRESENT AT THE BENCH.)

APPELLANT'S ATTORNEY: If he's going to impeach Mr. Bane through his statement, I think the proper way to do it is to give him the statement to look at it before asking him that type of question.

THE COURT: No, sir. You are absolutely wrong. You ask the question first, and if he denies it, then you—

APPELLANT'S ATTORNEY: In addition, Your Honor, I would have a continuing objection to any questions asked concerning the statement, whether it's for impeachment or for substantive purposes, as a violation of his Sixth Amendment right, as he asked for counsel and was not afforded one.

THE COURT: Was this litigated?

THE STATE: Yes, Your Honor.

THE COURT: And it was denied?

THE STATE: Your Honor, the motion was denied.

THE COURT: Okay.

APPELLANT'S ATTORNEY: I just want the record to reflect that.

THE COURT: All right. I have no problem with that. We're not going to re-litigate here, that's for sure, although I will note that I have the authority to re-litigate it, but I'm not about to do it.

APPELLANT'S ATTORNEY: I just want the record to reflect that I object and move to strike the last question concerning the use of the statement for impeachment

purposes, and I would like possibly to have a continuing objection to any other question involved with his statement.

THE COURT: I will grant you a continuing objection to protect your position with respect to the statement. And as I understand it, it's based on your contention that the denial of your motion to suppress it was incorrect?

APPELLANT'S ATTORNEY: That's correct, sir.

THE COURT: Okay. I'll give you a continuing objection.

APPELLANT'S ATTORNEY: Thank you, sir.

(BENCH CONFERENCE TERMINATED.)

Appellant asserts that the questioning concerning the "every piece of furniture" was improper impeachment because the State had not laid a proper foundation. Appellee, however, asserts that this issue is not properly preserved for appeal because appellant is now asserting a different reason for error than he did at trial. Specifically, appellee contends that although appellant's initial objection focused on improper foundation, he abandoned that objection and asserted that the statement made to Detective Davidson by appellant was made in violation of appellant's constitutional rights.

 We disagree. By objecting to further questioning about the statement on constitutional grounds, appellant did not abandon his initial objection on the ground that no proper foundation had been laid. Counsel clearly indicated that the new objection on constitutional grounds was in addition to, not in lieu of, his initial objection.

 Under Maryland law, a witness may be impeached by cross-examination to show that the witness previously made a statement contrary to the one made on the witness stand. *Foster v. State,* 297 Md. 191, 464 A.2d 986 (1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984); *Gray v. State,* 43 Md.App. 238, 403 A.2d 853, *cert. denied,* 286 Md. 747 (1979); *Yowell v. State,* 28 Md.App. 279, 344 A.2d 442 (1975). *See generally,* L.

McLain, *Maryland Evidence,* § 613.1 (1987). To impeach a witness by a prior inconsistent statement, a proper foundation must be laid. *State v. Kidd,* 281 Md. 32, 46 n. 8, 375 A.2d 1105 *cert. denied,* 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977); *Campbell v. Patton,* 227 Md. 125, 175 A.2d 761 (1961). When using a previously made *oral* statement for impeachment, the cross-examiner must inform the witness of the time and place the statement was made, the person to whom it was made, and its substance. *Id.*

Appellant's contention that the State was required to show him a prior statement before using it to impeach him would have been correct only if the prior statement had been a written one. *See Whisner v. Whisner,* 122 Md. 195, 89 A. 393 (1914).

 The purpose of laying a foundation is "to accord the witness the opportunity to reflect upon the prior statement so that he may admit it or deny it, or make such explanation of it as he considers necessary or desirable." *Devan v. State,* 17 Md.App. 182, 193, 300 A.2d 705, *cert. denied,* 268 Md. 747 (1973). *See also, Sanders v. State,* 1 Md.App. 630, 232 A.2d 555 (1967). Here, the State gave the appellant the following facts concerning the prior statement:

1. The time—March 14, 1986.
2. To whom the statement was made—Detective Davidson.
3. Substance of the statement—"... didn't you tell Detective Davidson that you knew where every piece of furniture was in the premises?"

Absent from these facts is an express statement of the place where the statement was made. That, however, is not fatal to a proper foundation because, as we said in *Devan v. State,* 17 Md.App. at 193, 300 A.2d 705, "there is no unvarying formula or ritual required for the establishment of a foundation to impeach." We believe a proper foundation was laid here because appellant was given sufficient information concerning his prior statement that he had "the

**156**

opportunity to reflect upon the prior statement so that he [could] admit it or deny it, or make such explanation of it as he consider[ed] necessary or desirable." *Id.* This is confirmed by appellant's response to the prosecutor's question about his prior statement: "I told him that I could describe the room. Not every piece of furniture or every knickknack or what color the carpet was or anything like that. I could describe the couch and I could describe the kitchen." It is pellucid, therefore, that appellant had been given enough information to enable him to "make such explanation of [the statement] as he consider[ed] necessary or desirable." *Id.*

JUDGMENTS REVERSED AND CASE REMANDED FOR NEW TRIAL.

COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.